STATE of Wisconsin, Plaintiff-Respondent,

v.

Kurt F. HAMILTON, Defendant-Appellant.

Supreme Court

*No. 83–1539–CR.  Argued September 6, 1984.—*
*Decided October 30, 1984.*

(Also reported in 356 N.W.2d 169.)

For the defendant-appellant there were briefs and oral argument by *Margaret A. Maroney,* assistant state public defender.

For the plaintiff-respondent there was a brief by *Patrick O'Neill, Jr.,* assistant district attorney, with *Robert D. Zapf,* district attorney, on the brief; and there was a brief by *Kirbie Knutson,* assistant attorney general, with *Bronson C. La Follette,* attorney general, on the brief, and oral argument by *Ms. Knutson.*

SHIRLEY S. ABRAHAMSON, J. This appeal, before the court on certification by the court of appeals pursuant to sec. 809.61, Stats. 1981–82, is from a judgment of conviction and from an order of the circuit court for Kenosha county, William U. Zievers, Circuit Judge. Kurt F. Hamilton, the defendant, was convicted of obstructing an officer contrary to sec. 946.41(1); his motion for postconviction relief was denied. We reverse the conviction.

This case presents an unusual fact situation, but the facts are simple and undisputed. The prosecution and conviction for obstructing an officer were based on the defendant's refusal to identify himself to an officer, rather than on the defendant's commission of an affirmative act. The difficulty of this case on appeal is the necessity of isolating the various issues presented by this simple fact situation and of deciding which of the several issues resolves the appeal.

The undisputed facts are based on the testimony of Kenosha County Sheriff's Deputy Charles Saftig, the

sole witness at the defendant's trial to the circuit court, which was sitting without a jury. Officer Saftig testified as follows:

During the early afternoon hours of October 15, 1982, Officer Saftig responded to a dispatch that some windows had been shot out at a residence and that a person inside the residence had observed someone in a house across the street and to the east peering around the drapes. When he arrived at the street of the reported incident, he parked the car and proceeded to the "house across the street" at 8305 12th Place. In the driveway of the house he found a can with pellet holes, and he observed BB's in the bottom of the can. He knocked on the door and identified himself as a county deputy sheriff to the juvenile who answered. In response to Saftig's questions the juvenile gave his name and age and stated that 8305 12th Place was his home. Saftig asked the juvenile if he owned a pellet gun. The juvenile said that he did, retrieved the gun from his brother's room, and showed it to Saftig.

Having observed someone seated inside the house, Saftig now identified himself to that person, the defendant in this case, and asked the defendant for identification. The defendant replied either: "I'm not giving you anything. What do you want the information for?" or "I'm not telling you anything." The officer advised the defendant that he was investigating a shooting and needed the information for a report. The defendant again replied, "I'm not telling you anything." The officer then advised the defendant that if he refused to provide identifying information, "he would be arrested for obstructing." When the defendant again refused to give the information, the officer arrested the defendant, handcuffed him, and removed him to a squad car.

Saftig then returned to the house and, after giving *Miranda* warnings, questioned the juvenile about the shooting incident. The juvenile replied that he and a friend,

who was not identified in this record, had been shooting the pellet gun that day.

We grant that the defendant's conduct in refusing to furnish identifying information was not a model for good civic-minded behavior. Indeed, the officer was probably justifiably irritated and disturbed by the defendant's refusal to respond to a simple request for identification. The issue, however, is whether the defendant violated sec. 946.41(1), Stats. 1981–82, which punishes anyone who knowingly obstructs an officer while the officer is doing any act in an official capacity and with lawful authority. Sec. 946.41(1) provides:

"(1) Whoever knowingly resists or obstructs an officer while such officer is doing any act in an official capacity and with lawful authority, is guilty of a Class A misdemeanor."[1]

Sec. 946.41 furthers the legitimate interests of the state in protecting peace officers, in preventing frustration of the valid enforcement of the law, in promoting the orderly and peaceful resolution of disputes, and in detecting and preventing crime. Yet not every barrier placed in the path of an officer gives rise to a violation of sec. 946.41(1).

The circuit court concluded, on the basis of Saftig's testimony and its interpretation of the law, that the officer had probable cause to believe that a crime had been committed, that the defendant had been in the vicinity of the crime, that the word *obstructs* in sec. 946.41(1) includes a person's refusal to furnish identifying information, and that the defendant's refusal to furnish identifying information upon the officer's request constituted a violation of sec. 946.41(1).

---

[1] The penalty for violating sec. 946.41 is a fine of not more than $500 or imprisonment of not more than one year in county jail or both. The defendant in this case was sentenced to 10 days' imprisonment in county jail.

In its certification the court of appeals identified the following issue: "Can an individual be arrested for refusing to provide identification information to an officer upon request?" As framed, the issue is very broad and encompasses several issues presented by the parties in their briefs and during oral argument before this court. Therefore, the court must first turn its attention to identifying which issue or issues must be decided to resolve this appeal.

Initially we recognize that an issue *not* presented in this case is whether the officer was authorized to ask the defendant to furnish identifying information. The defendant concedes that the officer had lawful authority to ask the defendant for identifying information.[2]

We now summarize each of the issues presented on appeal and the parties' arguments.

One issue raised in the appeal involves a question of statutory interpretation. Specifically, what is the meaning of the word *obstructs* in sec. 946.41(1)? Relying on sec. 946.41(2) and tracing the legislative history of sec. 946.41(1), the defendant asserts that the word *obstructs* embodies a concept of falsity and deceit. Thus the defendant maintains that he could not be convicted under sec. 946.41(1) for refusing to give any information; he

---

[2] The parties disagree whether sec. 968.24, Stats. 1981–82, provides justification for the officer's questioning the defendant. The state relies on this statute, while the defendant asserts that sec. 968.24 is not applicable since the defendant was in a private residence, not a public place.

Sec. 968.24 provides:

"968.24 **Temporary questioning without arrest.** After having identified himself as a law enforcement officer, a law enforcement officer may stop a person in a public place for reasonable period of time when the officer reasonably suspects that such person is committing, is about to commit or has committed a crime, and may demand the name and address of the person and an explanation of his conduct. Such detention and temporary questioning shall be conducted in the vicinity where the person was stopped."

could be convicted only for giving false information. In contrast, the state, consistent with the pattern jury instruction (Cr. No. 1765), defines the word *obstructs* in its ordinary dictionary definition as "to hinder, delay, impede, frustrate or prevent" an officer from performing his or her duties.

A second issue raised in this appeal concerns a question of the sufficiency of evidence. If the word *obstructs* in sec. 946.41(1) means "to hinder, delay, impede, frustrate or prevent an officer from performing his duties," as the state urges, is the evidence sufficient in this case to support a conviction? The state says yes, the defendant says no.

A third issue involves the question of whether sec. 946.41(1) is unconstitutionally vague. The defendant contends that the state's interpretation of the statute encompasses a virtually limitless range of conduct and is unconstitutionally vague, because it fails to give notice of what conduct is prohibited and because it fails to furnish guidelines to govern law enforcement and permits arbitrary enforcement. Although the statute incorporates general language, the state contends that it is not "vague" in the constitutional sense.

Finally, a fourth issue involves the question of whether it is constitutional for a state to punish a person who refuses to furnish identifying information upon the request of an officer investigating a crime.[3] The defendant reframes this question to fit the facts of the case. Thus

---

[3] The court of appeals viewed this case as raising issues not decided in *State v. Flynn*, 92 Wis. 2d 427, 285 N.W.2d 710, *cert. denied*, 449 U.S. 846 (1980), or in several other cases involving a *Terry* investigatory stop. *Terry v. Ohio*, 392 U.S. 1 (1968). The *Flynn* court explicitly stated it was not deciding, in that case, whether a person can be punished for a refusal to identify himself or herself. 92 Wis. 2d at 444.

In its certification the court of appeals called our attention to several United States Supreme Court cases as follows:

"The Court in *Florida v. Royer*, 460 U.S. 491, 75 L. Ed. 2d 229, 236 (1983), stated:

the defendant asks us to assume the following undisputed facts: the officer is lawfully present in a private residence, has probable cause to believe a crime has been committed, and requests identifying information from a person lawfully present in the residence. On the basis of these facts the defendant then states the issue as follows: may the state punish a person who refuses to furnish identifying information when the officer does not have probable cause or reasonable suspicion to believe the person committed a crime but does have reasonable suspicion to believe that the person might have information about the crime?

" '[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen. . . .

" 'The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way.'

"The United States Supreme Court cited Justice White's concurrence in *Terry v. Ohio*, 392 U.S. 1, 34 (1968), as support for this proposition. That concurrence states while an officer has a right to question a person stopped, '[he] is not obligated to answer', answers may not be compelled, and *refusal to answer furnishes no basis for an arrest. . . .' Id.* (Emphasis added.)

"Of course, the police officer's questioning in this case occurred in a private home, which takes the situation out of the realm of *Terry v. Ohio* and its progeny. However, without the *Terry* case as a guide, there is very little case law on this issue. On several occasions, the United States Supreme Court has declined resolution of this question.[2]"

"[2] *Brown v. Texas*, 443 U.S. 47, 53 n. 3 (1979). ('We need not decide whether an individual may be punished for refusing to identify himself in the context of a lawful investigatory stop which satisfies Fourth Amendment requirements.') *Michigan v. DeFillippo*, 443 U.S. 31 (1979) (no discussion of ordinance which had previously been found unconstitutionally vague by the Michigan Court of Appeals). *Kolender v. Lawson*, —— U.S. ——, 75 L. Ed. 2d 903 (1983) (statute was unconstitutionally vague as there was no standard for 'credible and reliable' identification)."

In this case, the circuit court characterized the defendant as a witness. The circuit court found that the officer was "calling on a member of the public to assist" his investigation. This factual finding may not be set aside on appeal unless it is clearly erroneous. Sec. 805.17(2), Stats. 1981–82. An examination of the record shows that the officer did not state that he had probable cause to believe that the defendant shot out the neighbor's windows or even that he suspected the defendant of having committed the crime. The record does not reveal that the defendant was ever charged with the shooting incident, and the parties agree that the record does not inculpate the defendant in the shooting. In fact, the trial court reasoned that if the officer had had a reasonable suspicion that the defendant was involved in the shooting, then greater protection should be accorded to the defendant and charging the defendant with obstructing might be "improper."

While upon appeal the state does not concede that no reasonable suspicion existed to believe the defendant might be the culprit, it maintains that the presence or absence of reasonable suspicion that the defendant might be the culprit is not dispositive of the case. The state asserts that any person, whether a potential witness or a potential accused, may be penalized for refusing to furnish identifying information to an officer investigating a crime. The state asserts that if a request for identifying information constitutes an invasion, as the defendant asserts, of a person's right to privacy or right to remain silent, the invasion, if any, is outweighed by the state's objectives of promoting the investigation of crimes and of preventing and punishing crime. The defendant argues that if neither probable cause nor reasonable suspicion exists to believe a person committed a crime, then arrest of that person for refusal to furnish identifying information would allow the state to circumvent the probable cause requirement for arrest and would

violate a person's state and federal constitutional right to remain silent.

As can be seen from the preceding summary, this case raises issues ranging from sufficiency of the evidence, to statutory interpretation, to the constitutionality of the statute. In deciding which of the several issues raised in this appeal to explore first, we are guided by generally recognized rules of appellate practice. One such rule is that the court will ordinarily not consider the constitutionality of a statute unless such a decision is essential to the determination of the question before the court. *State v. State Fair Park, Inc.,* 21 Wis. 2d 451, 124 N.W.2d 612 (1963). Another rule is that if there are multiple grounds for reversing a conviction, an appellate court may, in any event, be required to decide the sufficiency of the evidence issue. If the evidence is insufficient to sustain the conviction, the federal and state constitutional guarantees against double jeopardy may preclude remanding the case for a new trial. *State v. Ivy,* 119 Wis. 2d 591, 610, 350 N.W.2d 622 (1984). The only remedy available to the court may be to order a judgment of acquittal. *Burks v. United States,* 437 U.S. 1, 18 (1978).

Keeping these rules in mind, the first issue we will examine is whether the evidence in this case is sufficient to sustain a conviction for obstructing an officer.

The court has frequently set forth the standard of review to determine whether the evidence is sufficient to support a conviction. See, *e.g., Bautista v. State,* 53 Wis. 2d 218, 223, 191 N.W.2d 725 (1971). We restate it once again: The burden of proof is upon the state to prove every essential element of the crime charged beyond reasonable doubt. The test is not whether this court or any member is convinced of the guilt of the defendant beyond a reasonable doubt but whether this court can conclude

that a trier of facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true. On review we view the evidence in the light most favorable to sustaining the conviction. Reasonable inferences drawn from the evidence can be used to support a conviction; if more than one reasonable inference can be drawn from the evidence, the inference which supports the conviction is the one that the reviewing court must adopt.

The parties agree that the state must prove beyond a reasonable doubt three elements of the offense of obstructing an officer:

1. The defendant obstructed an officer;

2. The officer was doing an act in his or her official capacity and with lawful authority;

3. The defendant obstructed the officer, knowingly, that is, the defendant knew or believed that he or she was obstructing the officer while the officer was acting in his or her official capacity and with lawful authority. Wis. J.I. *Criminal,* Part II, No. 1765.

Accepting *arguendo* the state's definition of the word *obstructed* in the first element as meaning hindered, delayed, impeded, frustrated or prevented an officer from performing his or her duties, the defendant argues that the trier of fact in this case had no basis on which to find, beyond a reasonable doubt, that the defendant's conduct did obstruct the officer.[4] We agree with the defendant.

---

[4] The third element also appears to include the concept that the defendant's conduct did in fact obstruct an officer. The pattern jury instruction states:

"The third element of this offense requires that the defendant acted knowingly. Before you may find that the defendant acted knowingly, you must first find that the defendant knew or believed that the person *(resisted) (obstructed)* was an officer, that the officer was acting in his official capacity and with lawful

When we apply the standard of review described above and view the evidence in a light most favorable to sustaining the conviction, we conclude that there is insufficient evidence to prove the first element of the offense. No reasonable trier of fact could be convinced beyond a reasonable doubt that in this case the defendant is guilty of violating sec. 946.41(1), using the state's definition of the word *obstructs*.

The officer did not testify that the defendant's refusal to furnish identifying information affected the investigation in any way; nor does the officer's testimony lend itself to a reasonable inference that the defendant's refusal to furnish the information affected the investigation in any way. On the contrary, the only reasonable inference to be drawn is that the defendant's refusal to furnish information did not affect the investigation.

It is clear from the officer's testimony that the officer had the full cooperation of the juvenile during the investigation. The juvenile invited the officer into the house, admitted he had a gun, showed the gun to the officer, and admitted that he and a friend had fired the gun that day. The reasonable inference from the record is that the juvenile could have and would have identified the defendant if he been asked to do so. The officer, however, did not testify that he had asked the juvenile to identify the defendant or to identify the friend who was engaged in the shooting. In addition, since the defendant was apparently a guest in the juvenile's house and was not attempting to leave, the defendant can hardly be viewed as a person who would disappear. The only reasonable inference to be drawn from the record is not that the defendant's refusal to furnish identifying

authority, and that the course of conduct would resist or obstruct the officer in the performance of his duties, and that his conduct was *(resisting) (obstructing)* the officer." Wis. J.I.—Cr. No. 1765.

information obstructed the officer's investigation, but rather that the officer believed that refusal to furnish identifying information in and of itself constituted conduct that obstructed the officer and justified arrest of the person.

The state's position similarly appears to be that a person's failure to furnish identifying information when requested by an officer in the lawful performance of an act constitutes a *per se* violation of sec. 946.41(1). The state appears to assert that obstruction of an officer can be presumed from the defendant's refusal to provide the identifying information upon the officer's request. In addition, the state's position appears to be that to prove a violation of sec. 946.41(1), the state need not show that the defendant's conduct in any way affected the officer's ability to act.

The essential implication of the state's position is that the court would rewrite sec. 946.41 to include the following sentence: "Any person who is reasonably suspected of having information relating to a crime and who intentionally refuses to furnish identifying information to an officer investigating the crime, is guilty of the crime of obstructing an officer." This is not what sec. 946.41(1) says. Sec. 946.41(1) speaks in terms of a person who "obstructs" an officer. "Obstructs" is an element of the crime which the state must prove beyond a reasonable doubt. The legislature has not stated that a refusal to furnish identifying information is deemed to be obstruction, and we are not willing to rewrite sec. 946.41(1) as the state requests.

We conclude that in this case the evidence is insufficient to prove that the defendant's refusal to identify himself obstructed—that is, using the state's definition of *obstructed,* hindered, delayed, impeded, frustrated or prevented—the performance of Officer Saftig's duties.

The defendant was not suspected of having committed a crime, only of possibly having witnessed a crime. He was a guest in a private home; he was not fleeing. The requested identifying information appears to have been readily available from a resident of the home who had identified himself and was cooperating fully with the officer. On the basis of this record, no reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt of having hindered, delayed, impeded, frustrated or prevented the officer from performing his duties. In short, the record was not sufficient to support a finding of obstruction, one element of the criminal act defined by sec. 946.41 (1), Stats. 1981–82.

Since the state failed to prove an essential element of the crime, we must reverse the conviction. We need not decide the other three issues raised by the parties and implicit in the certification papers submitted by the court of appeals.

*By the Court.*—Judgment and order reversed.