STATE of Wisconsin, Plaintiff-Respondent,

v.

Tonnie TOLLIVER, Defendant-Appellant.†

Court of Appeals

*No. 88–0779–CR. Submitted on briefs December 15, 1988.—
Decided February 1, 1989.*

(Also reported in 440 N.W.2d 571.)

† Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Richard D. Martin,* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James M. Freimuth,* assistant attorney general and *Donald J. Hanaway,* attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.    Tonnie Tolliver appeals from a post-conviction order denying his request for dismissal of uttering a forged writing charge and issuance of worthless check charges based on sufficiency of evidence grounds.[1] The same order grants Tolliver a new trial because an illegally obtained confession was used against him.

A preliminary jurisdictional issue is presented. The state argues that the post-conviction order is a nonfinal order which is not appealable as a matter of right. The state does not object to our addressing Tolliver's claims on a discretionary appeal basis. As-

---

[1]Tolliver's notice of appeal recites that the appeal is taken from both the judgment of conviction and the post-conviction order. The order, however, vacates the judgment of conviction. Therefore we conclude that the only matters before us are those appealed from in the post-conviction order.

suming the matter is properly before us, the further issues are: (1) whether deposit of a forged check to an automatic teller machine constitutes "uttering" for purposes of the forgery statute; and (2) whether the evidence is sufficient to show that Tolliver intended that the checks in question not be paid pursuant to the worthless check statute.

We construe Tolliver's appeal as a petition for leave to appeal such an order, and we grant the petition. We further conclude that deposit of a forged writing by means of an automated teller machine constitutes an "utterance" for purposes of the forgery statute. We also conclude that the evidence was sufficient to show Tolliver's intent that the checks not be paid. Therefore, we affirm those portions of the post-conviction order which found the evidence sufficient as to all the charges.

## APPELLATE JURISDICTION

The state argues that the post-conviction order is not final because it grants Tolliver a new trial and therefore does not dispose of the entire matter in litigation. *See* sec. 808.03(1), Stats. In *State v. Wright,* 143 Wis. 2d 118, 420 N.W.2d 395 (Ct. App. 1988), this court determined that an order granting a new trial on ineffective assistance of trial counsel grounds was a final order entitled to appellate review. We note, however, that the issue in *Wright* was whether the *form* of the trial court's order met the requirements of *Radoff v. Red Owl Stores, Inc.,* 109 Wis. 2d 490, 326 N.W.2d 240 (1982), and *Fredrick v. City of Janesville,* 92 Wis. 2d 685, 285 N.W.2d 655 (1979). *Wright,* 143 Wis. 2d at 122–23, 420 N.W.2d at 397. *Wright* did not concern itself with the issue here—whether the requirement of a

new trial renders an order, clearly final in form, final in substance for purposes of appellate review.

Nonetheless, we need not address this issue because the retrial of Tolliver raises double jeopardy implications. In such situations we have been instructed to grant discretionary review. *State v. Jenich,* 94 Wis. 2d 74, 97a–97b, 288 N.W.2d 114, 292 N.W.2d 348, 349 (1980) (on motion for reconsideration). "Given the serious constitutional questions raised by claims of double jeopardy, review of such orders will often be necessary to protect the accused from 'substantial or irreparable injury'—one of the three criteria for testing the appropriateness of review under sec. 808.03(2)." *Id.* at 97b, 292 N.W.2d at 349. Therefore, we treat Tolliver's notice of appeal as a petition for leave to appeal a nonfinal order and we grant the petition.

## SUFFICIENCY OF EVIDENCE

### *Facts*

For purposes of the issues on appeal, the essential underlying facts are not in dispute. On April 15, 1985, Tolliver opened a checking account with $200 in cash at the Kenosha Savings and Loan under the name "Keith Brown." On the same day, a man who identified himself as "Charles Holmes" opened a checking account at Republic Savings and Loan in Kenosha with $100 in cash. Tolliver was not positively identified as "Charles Holmes." However, the address given by "Charles Holmes" was the same as that given by "Keith Brown."

On April 23, 1985, Tolliver, representing himself as "Larry Grimes," opened a checking account with $50 in cash at Pioneer Savings and Loan (Pioneer) in Racine. Tolliver provided the same address as that provided for "Keith Brown" and "Charles Holmes." Pioneer issued

eight "starter" checks on the account to Tolliver and, at the same time, Tolliver applied for a TYME card through Pioneer.

On April 29, 1985, Pioneer received a night deposit to the account of "Larry Grimes." This deposit was in the form of a personal check in the amount of $650 from "Keith Brown" to "Charles Holmes." The check was credited to the account of "Larry Grimes" at Pioneer. In due course, the check was dishonored by the bank of "Keith Brown" for lack of sufficient funds.

On May 8, 1985, Tolliver used his TYME card for the first time, making various deposit and withdrawal transactions at four different TYME machine locations between 10:08 p.m. and 11:35 p.m. Two of these transactions were deposits of $2500 and $500. Four of the transactions were withdrawals in the total amount of $240.

The $2500 deposit was by a check which had been stolen from Terry McCaughey whose business had been burglarized some years earlier. The $500 deposit was a check drawn on the account of "Charles Holmes." Both checks were returned to Pioneer with the notation that the accounts were closed. The McCaughey check also carried a notation that the document bore an unauthorized signature. The $2500 McCaughey check forms the basis for the uttering a forged writing charge against Tolliver.

Thereafter, large daily deposits were regularly made at TYME machines to Tolliver's Pioneer account. At the same time, the maximum allowable cash withdrawals were also made. All of the deposits were by personal checks drawn on either the Kenosha Savings and Loan account of "Keith Brown" or the Republic Savings and Loan account of "Charles Holmes."

On May 11 and 12, 1985, Tolliver issued three checks on the Pioneer account which were dishonored. These checks form the basis for the worthless check charges against Tolliver.

On May 13, 1985, Pioneer started receiving telephone calls from various banks that Tolliver's deposits were being returned dishonored. Pioneer immediately "locked out" Tolliver's account—meaning that no further transactions on the account were permitted.

*Forgery*

Tolliver argues that his act of depositing the forged $2500 McCaughey check into his own checking account by means of an automated teller does not constitute "uttering" under the forgery statute, sec. 943.38(2), Stats. The statute reads:

> Whoever utters as genuine or possesses with intent to utter as false or as genuine any forged writing or ′object mentioned in sub. (1), knowing it to have been thus falsely made or altered, is guilty of a Class C felony.

The elements of forgery are:

> First, that the writing was one by which legal rights or obligations are created or transferred.
> Second, that the writing was falsely (made) [or] (altered).
> Third, that the defendant uttered the writing as genuine.
> Fourth, that the defendant knew the writing was falsely (made) [or] (altered).

Wis J I—Criminal 1492 (footnote omitted).

Tolliver concedes the first, second and fourth elements for purposes of this appeal. He contests the

171

third element, arguing that the McCaughey check was not "uttered" within the meaning of the forgery law. This requires us to apply the statute to the facts of the case—an exercise that presents a question of law. *State v. Smith,* 142 Wis. 2d 562, 565, 419 N.W.2d 259, 261 (Ct. App. 1987). Tolliver's sufficiency of evidence issue additionally raises the question of whether the state has met its burden of proof—also presenting a question of law. *Burg v. Miniature Precision Components, Inc.,* 111 Wis. 2d 1, 12, 330 N.W.2d 192, 198 (1983). We review questions of law independently and without deference to the trial court's ruling. *Smith,* 142 Wis. 2d at 565, 419 N.W.2d at 261.

The statutes do not specifically describe the act of uttering. However, our supreme court described uttering in terms of "tendering" or "offering." *Little v. State,* 85 Wis. 2d 558, 562, 271 N.W.2d 105, 108 (1978). This court has said that "[a] forged writing is 'uttered' when it is *offered* as genuine for payment or acceptance, regardless whether the *offer* is accepted or value is received." *State v. Machon,* 112 Wis. 2d 47, 49–50, 331 N.W.2d 665, 666 (Ct. App. 1983) (emphasis added). The Wisconsin Jury Instructions uses the following language to describe "uttering":

> To utter (a check) [or] (an endorsement) as genuine simply means that the check is *presented* for payment (or cashed) with the representation that the (check) [or] (endorsement) is genuine. [Emphasis added.]

Wis J I—Criminal 1492.

Tolliver argues that the act of presentment in an automatic teller machine case occurs, not when the person deposits the forged writing via the machine, but

when the document is later presented, presumably by the owner of the machine, for payment to the drawee. We disagree. The purpose of the forgery statute is to safeguard confidence in the genuineness of documents relied upon in commercial and business activity. *Little,* 85 Wis. 2d at 562, 271 N.W.2d at 108. Whether the deposit of a forged document occurs by virtue of presentation to a live "flesh and blood" teller or via automatic teller machine, this purpose of the forgery statute is invoked. Tolliver's act introduced the forged check into the stream of financial commerce. This constituted uttering of the document.

In further support of his challenge to the sufficiency of the evidence on the forgery charge, Tolliver argues that the enactment, in 1982, of sec. 943.41(5)(c), Stats., prohibiting the deposit of a stolen or forged instrument by means of an automated financial service facility, precludes application of the forgery statute to this case. We disagree.

The law recognizes that a given factual scenario might embrace more than one crime. Section 939.65, Stats., provides that "[i]f an act forms the basis for a crime punishable under more than one statutory provision, prosecution may proceed under any or all such provisions." We need not here decide whether Tolliver's act also constitutes a violation of sec. 943.41(5)(c), Stats. Assuming it does, and since we have already concluded that Tolliver's act was also a forgery, the prosecutor could at least select one charge or the other in the proper exercise of discretion.[2] (*See* sec. 939.71,

---

[2]Tolliver makes no claim of prosecutorial abuse of discretion in selection of the charge. His argument is limited to the claim that the evidence does not establish an utterance under the forgery statute

Stats., limiting the number of prosecutions if an act forms the basis for a crime punishable under more than one statutory provision.)

We conclude that the forgery statute properly applies to Tolliver's act of depositing the McCaughey check. We also conclude that the evidence was sufficient to establish the element of uttering.

### Issuance of Worthless Checks

Tolliver next argues that the evidence was insufficient to establish that he intended that the three checks issued on May 11 and 12, 1985 on the Pioneer account not be paid. Again, this issue presents a question of law which we review *de novo. Burg,* 111 Wis. 2d at 12, 330 N.W.2d at 198.

The test we apply when reviewing the sufficiency of the evidence adduced at trial does not contemplate our being independently satisfied of the defendant's guilt beyond a reasonable doubt. *State v. Hamilton,* 120 Wis. 2d 532, 540, 356 N.W.2d 169, 173 (1984). Rather, we look only to assure that a trier of fact, acting reasonably, could be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true. *Id.* at 540–41, 356 N.W.2d at 173. We must view the evidence and the reasonable inferences therefrom in the light most favorable to the verdict. *Id.* at 541, 356 N.W.2d at 173.

Tolliver acknowledges that his scheme created artificially high balances. Because these balances, albeit artificial, were sufficient to cover the checks in question, Tolliver argues that the state has not met its

because the legislature contemplated such an act only under the "automatic teller" statute.

burden to show that Tolliver intended the checks not to be paid. Even if we were to accept Tolliver's inference as reasonable (a questionable leap in logic), an equally likely inference is that Tolliver intended that the checks not be paid. We must respect the inference that the trier of fact drew and that supports the conviction. *Id.* at 541, 356 N.W.2d at 174.

■

We conclude that the evidence was sufficient to establish that Tolliver intended that the checks he issued not be paid.[3]

*By the Court.*—Order affirmed.

[3]Tolliver also argues that sec. 943.24(3)(b), Stats., supports his claim that he did not harbor the requisite intent. This statute recites certain instances which constitute prima facie evidence of intent that a check or other order for the payment of money not be paid. These include:

> (a)  Proof that, at the time of issuance, the person did not have an account with the drawee; or
> (b)  Proof that, at the time of issuance, the person did not have sufficient funds or credit with the drawee and that the person failed within 5 days after receiving notice of nonpayment or dishonor to pay the check or other order; [and]
> (c)  Proof that, when presentment was made within a reasonable time, the person did not have sufficient funds or credit with the drawee and the person failed within 5 days after receiving notice of nonpayment or dishonor to pay the check or other order.

We think a strong argument can be made that Tolliver's "artificial balances" constitute the "insufficient funds" situation noted in para. (b) above, entitling the state to the presumption. Regardless, these statutory situations are not the exclusive means of proving intent. They only govern when the presumption comes into play. Here, the evidence is sufficient on the question of Tolliver's intent apart from this statute.