Joseph S. HENES, Plaintiff-Respondent,

v.

Matt MORRISSEY , individually and in his official
capacity as a Deputy Sheriff of the County of Oconoto
and Michael Zahn, individually and in his capacity as
Lieutenant of the County of Oconto, Defendants-
Appellants-Petitioners.

Supreme Court

No. 93–3116. Oral argument April 5, 1995.—Decided June 27,
1995.

(Also reported in 533 N.W.2d 802.)

339

For the defendants-appellants-petitioners there were briefs by *Donald L. Romundson, Terence J. Bouressa* and *Liebmann, Conway, Olejniczak & Jerry, S.C.,* Green Bay and oral argument by *Donald L. Romundson.*

For the plaintiff-respondent there was a brief and oral argument by *Gene M. Potack,* Menominee, MI.

WILLIAM A. BABLITCH, J. Matt Morrissey and Michael Zahn seek review of a court of appeals' decision denying them qualified immunity in a 42 U.S.C. sec. 1983 action brought against them by Joseph Henes. In August 1991, Morrissey and Zahn arrested Henes for obstruction when he refused to identify himself during an investigatory stop. We reverse the court of appeals. Although we agree with, the court of appeals that the deputies had reasonable suspicion to stop and question Henes and that the deputies did not have probable cause to. arrest for obstruction, we conclude that the law was such that they could have reasonably believed

343

their actions were lawful, and thus they are entitled to qualified immunity.

The facts are these. At approximately 2:35 a.m. on August 20, 1991, Oconto County deputies Michael Zahn and Matt Morrissey (deputies) received a teletype in their automobile from the Marinette County Sheriff's Department. The teletype informed the deputies that an automobile had been stolen in the Peshtigo area which is approximately 13 miles north of Oconto. The teletype read: "1990 Chev cav 2 dr gray in color Wi Reg ETP663 unknown direction of travel keys in vehicle." Approximately twenty minutes later when Zahn was giving Morrissey a ride home along State Highway 41, the deputies observed a man walking along the highway. The man, later identified as Joseph Henes, was walking towards Oconto and was approximately four miles north of Oconto and nine miles south of Peshtigo. Zahn and Morrissey believed that because of the time of night and the distance between Henes' location and the reported car theft, Henes was a suspect in the car theft. Accordingly, the deputies stopped and questioned Henes. When Henes would not identify himself, the deputies arrested him for obstructing their investigation under sec. 946.41, Stats.[1]

Henes moved to dismiss the complaint on the basis that his refusal to identify himself did not constitute "obstructing" under sec. 946.41, Stats. The circuit court agreed and dismissed the complaint for a lack of probable cause.

---

[1] Section 946.41, Stats., provides in part:

**Resisting or obstructing officer. (1)** Whoever knowingly resists or obstructs an officer while such officer is doing any act in an official capacity and with lawful authority, is guilty of a Class A misdemeanor.

Subsequently, Henes brought an action against the deputies under 42 U.S.C. sec. 1983 alleging, inter alia, that the deputies violated Henes' right to be free from unreasonable search and seizure under the Fourth Amendment to the United States Constitution and Article I, sec. 11 of the Wisconsin Constitution.[2] The deputies moved for summary judgment on the basis that they were entitled to qualified immunity. The circuit court denied the motion and *sua sponte* granted summary judgment for Henes on the issue of liability, allowing the case to go to the jury on damages only. The jury subsequently awarded Henes $500.00 in damages, and the court awarded attorneys' fees.

The deputies appealed, and the court of appeals affirmed in a per curiam decision. Specifically, the court of appeals concluded that the deputies lacked probable cause to arrest Henes. Further, the court concluded that the deputies were not entitled to qualified

---

[2] U.S. Const. amend. IV, provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Wis. Const. art. I, sec. 11 provides:

> **Searches and seizures.** Section 11. The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

This court consistently follows the United States Supreme Court's interpretation of the Fourth Amendment in interpreting Art. I, sec. 11 of the Wisconsin Constitution. *State v. Kiper*, 193 Wis. 2d 69, 81, 532 N.W.2d 698, 704, (1995).

immunity in light of this court's decision in *State v. Hamilton,* 120 Wis. 2d 532, 356 N.W.2d 169 (1984). The court concluded that *Hamilton,* decided seven years prior to the arrest, clearly established that a private citizen could not be arrested for failing to identify himself. The deputies petitioned and we granted review.

The primary issue in this case is whether the sec. 1983 action should be dismissed because the deputies are entitled to qualified immunity. Qualified immunity is a question of law for the court, and as such, is properly addressed and resolved at the summary judgment stage. *Burkes v. Klauser,* 185 Wis. 2d 308, 327, 517 N.W.2d 503 (1994).

Generally, government officials performing discretionary functions are immune from civil liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, (1982). Government officials are not entitled to qualified immunity if they knew or should have known that their action violated a suspect's constitutional rights. *Burkes,* 185 Wis. 2d at 326. The relevant inquiry in a qualified immunity case is:

> [W]hether a reasonable state official could have believed his or her act was constitutional "in light of clearly established law and the information [he or she] possessed" at the time of the official's action. *Anderson v. Creighton,* 483 U.S. 635, 641 (1987). (Footnote omitted).
>
> The standard of objective legal reasonableness used in determining qualified immunity requires the court to focus on the degree to which clearly established case law gives guidance to officials

faced with a particular fact situation. (Citation omitted). In determining whether it is objectively legally reasonable for public officials to conclude that a particular decision was lawful, we must examine the information they possessed in light of the established case law at the time. *Id.* at 326–27.

Under this test, we must determine whether in August 1991, the deputies could have believed it was lawful to arrest Henes for obstruction based upon his refusal to identify himself, in light of the information they possessed and the clearly established law at the time of the arrest. This necessitates a two-step process. First, Henes must show that the deputies' conduct violated the law. *Albright v. Rodriguez,* 1995 WL 170712 at *3 (10th Cir. 1995) (citing *Hinton v. City of Elwood, Kan.,* 997 F.2d 774, 779 (10th Cir. 1993)). Second, Henes must show that the constitutional rights the deputies violated were clearly established at the time of the conduct at issue. *Id.* (citing *Davis v. Scherer,* 468 U.S. 183, 197 (1984). If Henes meets these burdens, the deputies' immunity defense should fail unless the deputies can show extraordinary circumstances and can prove that they neither knew nor should have known of the relevant legal standard. *Harlow,* 457 U.S. at 819.

Henes contends that his arrest for obstruction was unlawful because the deputies lacked the requisite reasonable suspicion to perform an investigatory stop and in turn, lacked the probable cause to make an arrest for obstruction. The deputies, on the other hand, argue that they had reasonable suspicion to stop and question Henes, and his subsequent refusal to identify himself provided probable cause for an arrest of obstruction. Accordingly, our review first encompasses two separate determinations: whether the deputies had reasonable suspicion to stop and question Henes

and, if so, whether the deputies had probable cause to arrest him.

The first issue we address is whether the deputies had reasonable suspicion to stop and question Henes. In *Terry v. Ohio,* 392 U.S. 1, 22 (1968), the United States Supreme Court recognized that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Such an "intermediate response" is appropriate, for example, "in order to determine [a suspect's] identity or maintain the status quo momentarily while obtaining more information. . . ." *Adams v. Williams,* 407 U.S. 143, 146 (1972).

To determine whether a "Terry stop" is appropriate, a court must balance the public interest served by the seizure against the individual's right to be free from government intrusions. *Brown v. Texas,* 443 U.S. 47, 50 (1979). We stated in *State v. Jackson,* 147 Wis. 2d 824, 831, 434 N.W.2d 386 (1989) that "[i]t is a common sense question, which strikes a balance between the interests of society in solving crime and the members of that society to be free from unreasonable intrusions." To ensure that a person's individual liberty is not subject to arbitrary invasions, a stop must be based upon specific, articulable facts which give rise to a reasonable suspicion that the person committed, was committing, or was about to commit a crime. *Florida v. Royer,* 460 U.S. 491, 498 (1983). "Inarticulate hunches" do not justify an investigatory stop. *Terry,* 392 U.S. at 22.

The deputies in this case articulated these facts as giving rise to their suspicion that Henes had committed a crime:

1. They observed Henes walking down a highway at 2:35 a.m.

2. Henes was approximately nine miles from an area in which, they were recently notified, a car had been reported stolen and had an unknown direction of travel.

3. It was their experience as deputies that car thieves often drive the vehicle to a remote area away from the crime scene, "ditch it," and walk away.

We judge these facts against an objective standard. That is, "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry,* 392 U.S. at 21–22.

Henes contends that these facts do not give rise to a reasonable suspicion that he committed the car theft. He directs us to *Brown v. Texas* 443 U.S. 47 (1979), as a case wherein the court was faced with similar facts and found no reasonable suspicion to justify the investigatory seizure. In *Brown,* two officers were cruising in a patrol car in an area with a high incidence of drug traffic when they observed Brown and another man walking in opposite directions away from one another in an alley. They testified that although they did not suspect Brown of misconduct, they stopped Brown because the situation looked suspicious and they had never seen Brown in that area before. *Id.* at 48. When Brown refused to identify himself, the officer arrested him for violating a Texas code provision making it a criminal act for a person to refuse to give his name and

address to an officer, "who has lawfully stopped him and requested the information." *Id.*

The court reversed the conviction on the basis that none of the circumstances preceding the seizure justified a reasonable suspicion that Brown was involved in criminal conduct, and therefore, the investigatory stop was unlawful. *Id.* at 52. The court stated that in the absence of reasonable suspicion, "the balance between the public interest and appellant's right to personal security and privacy tilts in favor of freedom from police interference," because "the risk of arbitrary and abusive police practices exceeds tolerable limits." *Id.*

Henes contends that this case is analogous to *Brown* in that the deputies had nothing more than "inarticulable hunches" that Henes was involved in criminal activity. We disagree. Taken together, the facts relied on by the deputies give rise to a reasonable suspicion that Henes may have been involved in the Peshtigo car theft. Certainly, seeing a man walking alone down a highway at 2:35 a.m. gives rise to some minimal concerns: at the very least, the person may be stranded due to car trouble or may need some other type of emergency aid. Although we concede that under *Brown* this alone does not rise to a suspicion that Henes committed a crime, this in combination with their experience and the fact that Henes was in the vicinity of the reported car theft elevates the initial suspicion to a level sufficient to stop and question him. Surely it is not unreasonable to conclude that Henes could have traveled nine miles in the car within the time someone discovered the car was stolen, reported it to the sheriff's department and the department transmitted the teletype to the deputies. These deputies testified that they had experience with car thieves who

drive stolen vehicles to remote areas, "ditch them" and walk away. In light of this experience and the other facts, we conclude that it was reasonable for the deputies to suspect that Henes may have stolen the vehicle, driven it to the outskirts of Peshtigo, ditched it and walked away. When we balance the public's interest in effective law enforcement against Henes' interest in being free from police interference, we conclude that the suspicion aroused by the time of night and the vicinity of Henes in relation to the recently reported car theft, justified the initial limited seizure of Henes for purposes of briefly questioning him. The fact is these deputies would have been remiss in their duties to have failed to investigate further. *See Terry,* 392 U.S. at 23.

■■■■

Having concluded that the deputies were justified in stopping and questioning Henes, we must determine whether the deputies were justified in arresting Henes for obstruction when he refused to identify himself. In order to arrest a suspect without a warrant, the police must have "probable cause." " 'Probable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979); *see also Adams,* 407 U.S. at 148.

The deputies testified that they believed they had probable cause to arrest Henes for obstruction because when they stopped Henes as part of their investigation, they had the right to demand identification from him under sec. 968.24, Stats., and the right to arrest him for obstruction under sec. 946.41, Stats., if he refused. Section 968.24 provides:

**Temporary questioning without arrest.** After having identified himself or herself as a law enforcement officer, a law enforcement officer may stop a person in a public place for a reasonable period of time when the officer reasonably suspects that such person is committing, is about to commit or has committed a crime, and may demand the name and address of the person and an explanation of the person's conduct. Such detention and temporary questioning shall be conducted in the vicinity where the person was stopped.

Section 946.41 provides in part:

**Resisting or obstructing officer. (1)** Whoever knowingly resists or obstructs an officer while such officer is doing any act in an official capacity and with lawful authority, is guilty of a Class A misdemeanor.

**(2)** In this section:

(a) "Obstructs" includes without limitation knowingly giving false information to the officer or knowingly placing physical evidence with intent to mislead the officer in the performance of his or her duty including the service of any summons or civil process.

Specifically, the deputies argue that the word "demand" used in sec. 968.24 presumes a consequence for refusing to produce identification upon their "demand" for it during a lawful investigatory stop. The consequence, they contend, is arrest for obstruction under sec. 946.41.

The deputies maintain this is the only reasonable interpretation of sec. 968.24, Stats.; unless law enforcement officers have recourse when a suspect refuses to identify himself or herself during a lawful stop, the officers' ability to stop and question the suspect under *Terry* is meaningless. We disagree.

352

The obstruction statute cannot be used under these circumstances to arrest Henes for failing to identify himself. To do so would be contrary to the intended application of the obstruction statute as evinced by its own terms. There are three elements of the offense of obstructing an officer:

(1) the defendant obstructed an officer;

(2) the officer was doing an act in his or her official capacity and with lawful authority; and

(3) the defendant obstructed the officer knowing, that is, the defendant knew or believed that he or she was obstructing the officer while the officer was acting in his or her official capacity and with lawful authority. Wis. JI-Criminal 1766 (1992).

As to the first element, the statute defines "obstructs" to include "knowingly giving false information" or "knowingly placing physical evidence with intent to mislead." *See* sec. 946.41(2)(a). The deputies assert that obstruction is presumed from Henes' refusal to identify himself upon their request. In essence, they equate Henes' refusal to identify himself with "knowingly giving false information." As the court in *Hamilton* observed with respect to a similar argument, the deputies, in an effort to satisfy the first element of the offense, would have us rewrite the obstruction statute to include a sentence reading: "Any person who is reasonably suspected of a crime and who refuses to identify himself or herself to an officer investigating the crime, is guilty of the crime of obstructing an officer." Like the court in *Hamilton,* we are not willing to rewrite the statute as the deputies suggest. To do so would ignore the plain language of the statute, "knowingly giving false information." Henes did not *give* false

353

information, he merely refused to give identifying information. We do not equate the failure to identify oneself with the act of giving false information. *See also* Wis. JI-Criminal 1766 cmt 3 (1992) ("In the Committee's judgment, a refusal to answer questions, by itself, should not be considered 'obstructing an officer' . . ..") Mere silence, standing alone, is insufficient to constitute obstruction under the statute. Here, all Henes did was remain silent. He did not affirmatively act to obstruct the deputies' investigation: he did not give them false information, he did not flee from the deputies, nor did he act in any violent manner towards them. Without more than mere silence, there is no obstruction.

Further, the deputies have not shown how Henes' refusal to identify himself "obstructed" their investigation as required under the first element of the offense. Although the deputies contend that their investigation was delayed by Henes' refusal to identify himself, they have not proved that obtaining his name would have confirmed or refuted their suspicions or in fact made any difference in their investigation. The action justifying an arrest for obstruction cannot simply "inconvenience" the official; the action must make a difference in an official's ability to perform an official act. *See Hamilton,* 120 Wis. 2d at 543 (holding that the evidence was insufficient to sustain a conviction for obstruction based on a defendant's refusal to identify himself).

In sum, we will not adopt a per se rule, as the deputies would have us do, that after being lawfully detained, a suspect can be arrested for obstruction for refusing to identify himself or herself. We conclude that such a rule would be contrary to the intended.

application of the obstruction statute. Accordingly, we conclude that the deputies lacked probable cause to arrest Henes for refusing to identify himself; his refusal could not elevate the deputies' reasonable suspicion that he committed the car theft to probable cause that he obstructed their investigation.

Thus, we are led to the fundamental issue: qualified immunity. "When a warrantless arrest is the subject of a § 1983 action, the defendant arresting officer is 'entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest' the plaintiff." *Romero v. Fay,* 45 F.3d 1472, 1476 (10th Cir. 1995) (quoting *Hunter v. Bryant,* 502 U.S. 224, 228–29 (1991)).

In dismissing the deputies' appeal in this case, the court of appeals concluded that the deputies were not entitled to qualified immunity because seven years before Henes' arrest the case of *State v. Hamilton,* 120 Wis. 2d 532, clearly established that a private citizen could not be arrested for failing to identify himself.

We disagree with the court of appeals' interpretation of *Hamilton.* In *Hamilton,* this court did not address the broad question of whether an officer could arrest a suspect for obstruction based upon the suspect's refusal to identify himself or whether an officer could be held civilly liable for doing so. Rather, this court in *Hamilton* addressed whether the evidence was sufficient to support a defendant's conviction for obstructing an officer by refusing to identify himself. We concluded it was not. 120 Wis. 2d at 543.

More importantly, the circumstances in *Hamilton* are distinguishable from those in this case such that the deputies could have reasonably believed *Hamilton* was not controlling. In *Hamilton,* the arrest took place in a private residence where the defendant, as the

355

court noted, was not likely to leave. In this case, Henes was walking alone down a public highway during the middle of the night. If he had been allowed to proceed without identifying himself, he could have disappeared into the darkness and the deputies would have had no way to locate him. In *Hamilton,* the officers never testified that they suspected the defendant of a crime. In fact, in *Hamilton* the defendant was more akin to a witness at the crime scene. In contrast, the deputies here reasonably suspected Henes of the car theft. Finally, in *Hamilton,* the resident of the home was readily available to identify the defendant; here, Henes was alone and the deputies' ability to obtain his name depended solely upon his cooperation.

Although the court of appeals also pointed to *Moya v. U.S.,* 761 F.2d 322 (7th Cir. 1984), for support, we are not persuaded. First, the deputies are bound on the constitutional issue addressed in *Moya* only by the pronouncements of this court and the United States Supreme Court. *State v. Webster,* 114 Wis. 2d 418, 426 n.4, 338 N.W.2d 474 (1983). Second, the deputies here relied on sec. 968.24, Stats., and sec. 946.41, Stats., as the basis for Henes' arrest. As we had not construed these statutes in this context before today, it would not have been unreasonable to believe *Moya* was inapplicable to Henes' arrest.

In light of this, we conclude that the law was not clearly established by this court at the time of Henes' arrest, on the issue of whether an officer may arrest an individual lawfully detained for refusing to identify himself or herself.[3] Nor has the law on this question been resolved by the United States Supreme Court.

---

[3] Henes focuses solely on the issue of reasonable suspicion and provides no cases on this issue.

The Supreme Court declined resolution of this issue several times. *See e.g., Brown,* 443 U.S. at 53 n.3; *DeFillippo,* 443 U.S. 31; *Kolender v. Lawson,* 461 U.S. 352 (1983). In addition, Fourth Amendment commentators have observed that the state of the law on this issue is uncertain. *See, e.g.,* Scott Lewis, *Terry Tempered or Torpedoed? The New Law of Stop And Frisk,* 61 Wis. Bar Bull. 7, 8 (1988) ("The request for identification and the stop to demand same have always presented a thorny problem for the courts and remains unresolved even today."); Henry G. Watkins, *The Fourth Amendment and the INS: An Update on Locating The Undocumented and a Discussion on Judicial Avoidance of Race-Based Investigative Targeting in Constitutional Analysis,* 28 San Diego L. Rev. 499, 534 (Summer, 1991) ("[T]here is some question whether one may, consistent with the Constitution, be required to provide identification after [a *Terry* stop].").

In light of the lack of guidance on this issue, i.e., the uncertain state of the law at the time of Henes' arrest, the facts established, and the deputies' knowledge of secs. 968.24 and 946.41, Stats., we conclude that the deputies could have reasonably believed, under an objective standard, that they could arrest Henes for refusing to identify himself. Until today, we had not specifically construed the obstruction statute in the context of a *suspect's* refusal to provide identification during a lawful investigatory stop. The facts in *Hamilton* are distinguishable. Accordingly, the obstruction statute could have been read by the deputies to mean that Henes, in refusing to identify himself during a lawful investigatory stop, knowingly "obstructed" their investigation. Even though the deputies were mistaken in concluding that they could

arrest Henes under sec. 946.41, they are entitled to qualified immunity if they reasonably believed, as they did, that their actions were lawful.. "We have recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials . . . should not be held personally liable." *Anderson v. Creighton,* 483 U.S. 635, 641 (1987). Qualified immunity accommodates the delicate balance between competing values: the desire to protect citizens' rights to a damage remedy for a violation of personal liberties and the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority. *Harlow,* 457 U.S. at 807.

In sum, we conclude that under our analysis set forth today, the deputies had reasonable suspicion to stop and question Henes, but lacked the probable cause to arrest him for obstruction under sec. 946.41, Stats., when he refused to identify himself during the investigatory stop. We also conclude, however, the deputies could have reasonably believed in light of the uncertain state of the law and the facts they possessed at the time of the arrest, that the arrest was lawful. Accordingly, they are entitled to qualified immunity and the decision of the court of appeals is reversed.

*By the Court.*—The decision of the court of appeals is reversed.

SHIRLEY S. ABRAHAMSON, J. *(dissenting).* The court of appeals concluded correctly that the deputies are not entitled to qualified immunity. A reasonable person would have known that no Wisconsin law

authorizes an arrest based on a person's failure to furnish his or her name and thus the arrest violated Henes's constitutional rights. For this reason, I dissent.

Before addressing the issue of qualified immunity, the majority first explores whether the deputies relied on the requisite reasonable suspicion to perform an investigatory stop. The majority determines that the deputies' suspicion that Henes was involved in the auto theft was in fact reasonable. It bases this conclusion on the following factors: the deputies spotted Henes at 2:35 a.m., he was within nine miles of a reported crime, and the deputies had experience dealing with the same type of reported crime. As a backup argument, the majority correctly explains that when the officers saw Henes they could inquire whether he required assistance.

I agree that minimal investigation is justified as "a reasonable balance between individual privacy and the public interest in allowing the police a reasonable scope of action in the discharge of their responsibility for general maintenance of peace and order in the community." *Bies v. State,* 76 Wis. 2d 457, 472, 251 N.W.2d 461 (1977). Although Henes's walking at night arguably provokes concern for him, the factors the majority relies on appear closer to hunches and are not quite articulate enough to support the investigatory stop in this case. Nevertheless, even assuming that the stop was valid, this conclusion is not determinative of the issue of qualified immunity because the deputies arrested Henes.

The majority next concludes, as it must, that the deputies lacked probable cause to arrest Henes for obstruction. It finds unpersuasive the deputies' contention that sec. 968.24, Stats. 1991–92, authorizing law

enforcement officers to demand a suspect's name, allows officers to arrest a suspect who refuses to comply with that demand. Majority op. at 353–54.

Furthermore, the majority reasons that the "plain language" of sec. 946.41, Stats. 1991–92, the obstruction statute, applies only to a person who "knowingly gives false information," not to a person who gives no information. Majority op. at 354–55. Finally, the majority agrees with the conclusion in *State v. Hamilton,* 120 Wis. 2d 532, 356 N.W.2d 169 (1984), that the obstruction statute would have to be rewritten to authorize the arrest of someone who refuses to provide identifying information.

After its unequivocal conclusion that no law in Wisconsin allows officers to base an arrest for obstruction on a person's refusal to relinquish his or her name, the majority curiously finds that a reasonable officer could have considered the state of the law unclear. The majority ignores its earlier conclusion that the obstruction statute plainly forbids such an arrest, hedges on the clarity of *Hamilton,* and invokes unrelated cases to argue that the United States Supreme Court has declined to resolve the issue "of whether an officer may arrest an individual lawfully detained for refusing to identify himself or herself." Majority op. at 357.

First, I agree with the majority's conclusion that the obstruction statute plainly forbids an arrest based on a person's failure to reveal his or her name.

Second, I conclude that *Hamilton* decisively prohibits an officer from using the obstruction statute to arrest someone who refuses to give identifying information. " 'Obstruction' is an element of the crime which the state must prove beyond a reasonable doubt. The legislature has not stated that a refusal to furnish identifying information is deemed to be obstruction, and we

are not willing to rewrite sec. 946.41(1) as the state requests." *Hamilton,* 120 Wis. 2d at 543.

Third, I found no case in which the United States Supreme Court has been asked to resolve the issue presented in this case, namely whether officers may *arrest* persons for refusing to identify themselves in the absence of a statute making it a crime to do so. The three cases cited by the majority involve statutes or ordinances making it an offense for persons stopped by law enforcement officers to refuse to identify themselves under certain circumstances. The Court determined in each case the constitutionality of an arrest under the applicable legislative enactment.[1] There is no statute in Wisconsin similar to those

---

[1] *Brown v. Texas,* 443 U.S. 47 (1979) (finding invalid a conviction under a Texas statute that made it a crime to refuse to provide identifying information when asked by a police officer); *Michigan v. DeFillippo,* 443 U.S. 31 (1979) (upholding an arrest and a search under a presumptively valid Detroit ordinance making it unlawful to refuse to identify oneself, despite the fact that the ordinance was later declared unconstitutionally vague); *Kolender v. Lawson,* 461 U.S. 352 (1983) (declaring unconstitutionally vague a California statute requiring loiterers to identify themselves when requested by a peace officer).

In *Brown* the court stated:

> We need not decide whether an individual may be punished for refusing to identify himself in the context of a lawful investigatory stop which satisfies Fourth Amendment requirements. *See Dunaway v. New York,* 442 U.S. 200, 210, n.12, (1979); *Terry v. Ohio,* 392 U.S. 1, 34, (1968) (White, J., concurring). The County Court Judge who convicted appellant was troubled by this question, as shown by the colloquy set out in the Appendix to this opinion.

*Brown,* 443 U.S. at 53, n.3.

An examination of *Dunaway* and *Terry* to which *Brown* refers demonstrates that the United States Supreme Court was not addressing or commenting on the issue in this case.

361

involved in the cases before the Supreme Court criminalizing failure to identify oneself.

All crimes in Wisconsin are statutory. Section 939.10, Stats. 1991–92, declares that "[c]ommon-law crimes have been abolished in Wisconsin." A crime is made up of two parts: proscribed conduct and a prescribed penalty. "The former without the latter is no crime." Wayne R. LaFave and Austin W. Scott, Jr., Criminal Law, sec. 1.2(d) at 9–10 (2d ed. 1986). In this case no statute penalizes a refusal to identify oneself to a law enforcement officer, and no penalty is set forth in the statute for refusing to identify oneself. Section 968.24, upon which the deputies and the majority opinion rely, is not in any chapter defining crimes and setting forth penalties. This statute is part of Chapter 968 entitled "Commencement of Criminal Proceed-

The United States Supreme Court wrote in *Dunaway,* 442 U.S. at 210 as follows:

> Because *Terry* involved an exception to the general rule requiring probable cause, this Court has been careful to maintain its narrow scope. *Terry* itself involved a limited, on-the-street frisk for weapons.[fn 12]

> [fn 12] *Terry* specifically declined to address "the constitutional propriety of an investigative 'seizure' upon less than probable cause for purposes of 'detention' and/or interrogation." *Id.,* at 19, n.16. Mr. Justice White, in a concurring opinion, made these observations on the matter of interrogation during an investigative stop:

> "There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets. Absent special circumstances, the person approached may not be detained or frisked but may refuse to cooperate and go on his way. However, given the proper circumstances, such as those in this case, it seems to me the person may be briefly detained against his will while pertinent questions are directed to him. Of course, the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest, although it may alert the officer to the need for continued observation." *Id.,* at 34.

ings." By its very terms sec. 968.24 empowers a law enforcement officer to stop and question "in the vicinity where the person was stopped." The statute does not authorize a law enforcement officer to make an arrest.

Furthermore, if a person is convicted of an act or omission prohibited by statute (that is, if refusal to identify oneself were prohibited by statute) and no penalty were expressed in the statute for the prohibited conduct (no penalty is prescribed here), the person is subject to a forfeiture not to exceed $200.00, making the offense a civil violation, not a crime. Section 939.61(1), Stats. 1991–92. The legislature has abolished common-law penalties in Wisconsin. Section 939.61(3), Stats, 1991–92. *See also* sec. 968.07 (authorizing warrantless arrest for commission of a crime, not a civil offense); sec. 818.01 (providing that no person may be arrested in a civil action except as prescribed by ch. 818; nothing in ch. 818 authorizes an arrest for a civil violation falling within sec. 939.61(1)).

Thus the deputies and the majority have to rely on the obstruction statute for the definition of criminal conduct and a penalty. I am convinced by the majority opinion's discussion of the obstruction statute itself (as well as the clear judicial language in *Hamilton* discussing the statute) that no reasonable person could believe that the obstruction statute includes within its terms persons who fail to identify themselves. Nor could a reasonable person determine that any other statute authorizes the arrest of persons for refusing to state their names.

Accordingly, I conclude that no reasonable person could have believed authority existed to arrest Henes for failing to provide his name. Hence, the deputies in this case are not entitled to qualified immunity.

For the reasons stated, I dissent.

363

I am authorized to state that Chief Justice NATHAN S. HEFFERNAN joins this opinion.