STATE of Wisconsin, Plaintiff-Respondent,

v.

Gilbert J. GROBSTICK, Defendant-Appellant.†

Court of Appeals

*No. 94–1045–CR.  Submitted on briefs January 13, 1995.—Decided February 15, 1996.*

(Also reported in 546 N.W.2d 187.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the brief of *Katherine R. Kruse* of *Legal Assistance to Institutionalized Persons* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, with *James M. Freimuth*, assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Vergeront, J.

GARTZKE, P.J.   Gilbert Grobstick appeals from a judgment convicting him of obstructing an officer, § 946.41(1), STATS., and felony escape from custody, § 946.42(3)(a), STATS. He asserts that the evidence was insufficient to convict him on the obstruction charge because fleeing and hiding from an officer do not establish "obstruction." He also asserts that because the jury instruction on the escape charge erroneously referred to a bench warrant as a ground for his arrest, his conviction for felony escape must be reversed. We conclude that the evidence is sufficient to convict Grobstick on the obstruction charge. Because we decline to exercise our discretion to review the unobjected-to jury instruction for the escape charge, we affirm the escape conviction.

The jury heard testimony presented by the State from five witnesses. No witness testified for the defense.

La Crosse Deputy Sheriff Lubinski testified that at 4:30 p.m. on September 17, 1992, he went to Grobstick's La Crosse residence to arrest him pursuant to a bench warrant. Grobstick's girlfriend, Christine Lund, told him Grobstick was not home. Lubinski left and returned at 7:30 or 8:00 p.m. Ms. Lund asked why Lubinski was there. He replied that he had a bench warrant. Ms. Lund said that Grobstick was in the shower and he would be upset that a warrant was out for his arrest. Lubinski said that Lund permitted him to enter the house.

Lubinski testified that upon entering the house, a child told him that Grobstick "just went out the back window." Lubinski found the bathroom window "wide open," and Ms. Lund suggested that Grobstick would be wearing few clothes and no shoes. Lubinski called for backup assistance.

Deputy Horstman and La Crosse police officer Thornton responded. Horstman testified that he searched the neighborhood for Grobstick without success, but a boy reported seeing Grobstick re-enter his residence. Thornton said that upon searching the residence with Ms. Lund's consent, he "eventually found [defendant] hiding in a closet behind some clothes." Lubinski testified that Grobstick was in a "kind of a balled up, fetal position, inside a . . . linen closet in the hallway." Lubinski testified that Grobstick had evaded the officers for ten to fifteen minutes. Both Lubinski and Thornton testified before finding Grobstick in the closet they had not contacted or spoken to him on September 17, 1992.

Lubinski and officer Thornton testified Grobstick was arrested both for the crime of disorderly conduct and pursuant to the bench warrant. The officers testified that Grobstick was handcuffed behind his back

and put in the back seat of Thornton's squad car for transportation to the county jail. While Thornton drove to the jail, Lubinski followed in his own vehicle. According to Thornton, en route to the jail Grobstick managed to reach out an open window to unlock the rear door of the squad car. He opened the door when Thornton slowed to make a turn, tumbled out and took off running. The officers pursued Grobstick on foot through backyards.

La Crosse officer Schatzley testified that he responded in his own squad car to a radio call regarding Grobstick's flight and ultimately cornered Grobstick and knocked him to the ground. Grobstick was still handcuffed. He was taken to jail.

Ms. Lund testified that on September 17, 1992, she was living with Grobstick. When Lubinski first came to the residence looking for Grobstick, she reported that he was at work. He came home between 6:00 and 7:00 p.m. She did not tell Grobstick that deputy Lubinski had been there looking for him. When Lubinski returned later that night she saw papers in his hand and asked "if there was a warrant for" Grobstick. When the deputy answered yes, she asked if Grobstick was going to be arrested and the deputy replied that upon payment of $500 at the courthouse, Grobstick "wouldn't be taken in." She spoke with Lubinski outside her home in the backyard. The doors and windows to the house were open. She told Lubinski that Grobstick was in the shower, and she permitted the deputy to enter the house. She could not recall if one of the children had said that Grobstick had gone out the window but she noted an open bedroom window.

The obstruction statute, § 946.41, STATS., provides in relevant part:

247

(1) Whoever knowingly resists or obstructs an officer while such officer is doing any act in an official capacity and with lawful authority, is guilty of a Class A misdemeanor.

(2) In this section:

(a) "Obstructs" includes without limitation knowingly giving false information to the officer or knowingly placing physical evidence with intent to mislead the officer in the performance of his or her duty including the service of any summons or civil process.

(b) "Officer" means a peace officer or other public officer or public employe having the authority by virtue of the officer's or the employe's office or employment to take another into custody.

■

As applied to the present case, the elements of § 946.41(1), STATS., are: (1) that the defendant obstructed an officer; (2) that the officer was doing an act in an official capacity; (3) that the officer was doing an act with lawful authority; and (4) that the defendant "knew or believed that he . . . was obstructing the officer while the officer was acting in [an] official capacity and with lawful authority." *State v. Caldwell*, 154 Wis. 2d 683, 689-90, 454 N.W.2d 13, 16 (Ct. App. 1990). The jury was so instructed. Grobstick did not object to the instruction.

On appeal, Grobstick challenges the sufficiency of the State's evidence on the first and fourth elements—that Grobstick actually "obstructed" an officer and that he did so with knowledge that the officer was acting in an official capacity and with lawful authority. Grobstick asks us to limit criminal liability for obstruction to cases in which there has been "prior contact by police officers [with the defendant] or cases where

there has been no prior contact but where the person obstructing is suspected of engaging in criminal activity." He argues that although he jumped out a window and later hid from the police officers in a closet, he did not frustrate law enforcement because he had no prior contact with the officers that day and they found him in a short time.

■■■■ Our review of sufficiency of the evidence supporting a criminal conviction is limited. We may not substitute our judgment for that of the jury unless the evidence viewed most favorably to the State and the conviction is so lacking in probative value and force that no jury, acting reasonably, could have found guilt beyond a reasonable doubt. If any possibility exists that the jury could have drawn the appropriate inferences from the evidence to find the requisite guilt, we may not overturn a verdict even if we believe the jury should not have found guilt. *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752, 757-58 (1990). We do not concern ourselves with evidence which might support other theories of the crime. We decide only whether the theory of guilt the jury accepted is supported by sufficient evidence. *Id.* at 507-08, 451 N.W.2d at 758.

The State concedes that the sufficiency question regarding Grobstick's obstruction conviction concerns only the evidence relating to his conduct and state of mind before his arrest at his residence. The jury was instructed, without objection from Grobstick, that "obstructing" means "that the conduct of the defendant prevents or makes more difficult the performance of the officer's duties."

The evidence that Grobstick jumped out a window of his residence and then returned and hid in a closet is

enough for the jury to find that he had "made more difficult" Lubinski's task of executing the warrant. That Grobstick eluded the officers for some ten or fifteen minutes did not make his conduct any less a hindrance to them.

That Lubinski sought to arrest Grobstick on a bench warrant or a civil matter is of no consequence.[1] No reason exists to draw a distinction between a person's knowing he faces a lawful arrest for failure to appear as ordered in a matter, as opposed to arrest for a criminal offense, when determining whether the person must submit or face conviction for "obstructing." As the State points out, the distinction between civil and criminal arrest is unworkable because, in the case of a lawful warrantless arrest, the prospective arrestee may not know whether the officer suspects him of a civil violation or criminal offense. If Grobstick's position were the law, such information would be critical to a person's deciding whether failure to submit carried with it the risk of conviction for resisting or obstructing.

We reject Grobstick's contention that unless a person is suspected of criminal activity, he should not be criminally liable for obstructing an officer merely by refusing to meet the officer, in the absence of prior contact between the person and the officer. The relevancy of a "prior contact" is only to whether the person "knowingly" obstructed the officer—whether the defendant knew or believed the officers were acting with

---

[1] The warrant directed that Grobstick be arrested and brought before the court because he had failed to appear, as ordered, on a charge of operating after revocation, third offense, § 343.44, STATS. The warrant provided for a $500 bond. The arrest was made to compel an appearance or post the bond. It was not an arrest for a crime.

lawful authority—and that is a matter to be proven by inference from all the facts.

The jury could find from the evidence that Grobstick knew Lubinski was acting in his official capacity as a law enforcement officer and that Grobstick believed that the deputy had lawfully come to arrest him. Grobstick's intent to obstruct deputy Lubinski is easily inferred from his conduct. *See State v. Lossman*, 118 Wis. 2d 526, 542-43, 348 N.W.2d 159, 167 (1984) (intent to obstruct must be ascertained from the totality of the circumstances). Grobstick jumped out a window, later returned to the house and hid in a closet. That reflected Grobstick's awareness that Lubinski was acting in his official capacity as a law enforcement officer. Moreover, the jury could infer from Ms. Lund's testimony that Grobstick heard Lubinski say he had a warrant for Grobstick's arrest. That is a reasonable inference from Grobstick's immediately jumping out a window while wearing little clothing. Because the jury could infer that Grobstick was aware of the warrant, it could further conclude that he knew Lubinski was acting with lawful authority.

Because we conclude that the jury could find Grobstick guilty of having obstructed an officer, we affirm that conviction.

We turn to Grobstick's conviction for felony escape, § 946.42(3)(a), STATS. So far as is pertinent to this appeal, § 946.42(3) provides:

> A person in custody who intentionally escapes from custody under any of the following circumstances is guilty of a Class D felony:
>
> (a) Pursuant to a legal arrest for, lawfully charged with or convicted of or sentenced for a crime . . . .

The elements of felony escape are: (1) that the defendant was in custody; (2) that the custody resulted from a legal arrest for a crime; (3) that the defendant escaped from custody; and (4) that the escape from custody was intentional. The jury was so instructed.

The trial court instructed the jury regarding the second element as follows:

> The second element requires that the defendant has been in custody as a result of legal arrest for a crime. An arrest for a crime is legal when the officer making the arrest believes on reasonable grounds that a warrant for the person's arrest has been issued in this state or has reasonable grounds to believe that the person has committed or is committing a crime. Disorderly conduct is a crime.[2]

Grobstick did not object to the instruction. We lack the power to review an unobjected-to instruction, even if the instruction impairs a defendant's constitutional right. *See State v. Schumacher*, 144 Wis. 2d 388, 395, 409, 424 N.W.2d 672, 674, 680 (1988) (court of appeals lacks power to review instruction claimed to have deprived defendant of constitutional right to unanimous jury). We cannot even decide if the instructions affected the integrity of the fact-finding process. "The court of appeals does not have the power to find that

---

[2] After first capturing Grobstick at his residence, the police arrested him for disorderly conduct. The State charged him with two counts of resisting an officer and one count of felony escape. The State later dropped one of the resisting counts and amended the other resisting count to obstructing. The State never charged Grobstick with disorderly conduct.

unobjected-to errors go to the integrity of the fact-finding process . . . ." *Id.* at 409, 424 N.W.2d at 680.

We may, however, examine an unobjected-to instruction[3] when exercising our discretion under § 752.35, STATS. *Vollmer v. Luety*, 156 Wis. 2d 1, 17, 456 N.W.2d 797, 804 (1990). That statute allows us to reverse a conviction and order a new trial in the interest of justice if the real controversy has not been fully tried or justice has miscarried. Section 752.35.

Grobstick argues that the jury, guided by the instructions with respect to the second element, could have erroneously based its conviction on his arrest under the warrant. Due process is violated when a jury issues a general verdict based on one or more legally erroneous theories to establish guilt. *Griffin v. United States*, 502 U.S. 46 (1991). The warrant could serve as the basis for conviction for felony escape only if it was issued for a crime. The warrant for his arrest was for a civil offense.[4]

We decline to exercise our power of discretionary reversal under § 752.35, STATS. For us to reverse under that statute on grounds that it is probable that justice has miscarried, we must first find a substantial probability that a second trial will produce a different result. *State v. Wyss*, 124 Wis. 2d 681, 736, 370 N.W.2d

---

[3] The instructions appear in the record as a separate packet, and the State has assumed, for purposes of appeal, that the jury received the instructions in the packet. Grobstick does not contravene that assumption.

[4] A person who escapes from custody pursuant to a civil arrest or body execution is guilty of a Class A misdemeanor. Section 946.42(2)(c), STATS.

253

745, 771 (1985); *Vollmer*, 156 Wis. 2d at 16, 456 N.W.2d at 804. We are far from satisfied that a second trial will probably produce a different result.

For us to reverse under § 752.35, STATS., on grounds that the real controversy was not tried, we need not find a substantial probability of a different result at the second trial. *Vollmer*, 156 Wis. 2d at 16, 456 N.W.2d at 804. Assuming that the trial court erred by submitting the warrant as an alternative basis for his conviction for felony escape, the unobjected-to-instructional error did not prevent the real controversy from being tried. The instruction also referred to disorderly conduct. Deputy Lubinski testified that he arrested Grobstick for disorderly conduct before Grobstick fled from the police car. Disorderly conduct is a crime. It matters not that the State never charged Grobstick with disorderly conduct.[5]

The actor's innocence of the crime for which he is in custody is no defense to the crime of escape. WIS J I—CRIMINAL 1772 n.4 (quoting Judiciary Committee's 1953 Report on the Criminal Code, cmt., at 191). *See also People v. Hill*, 160 N.E.2d 779, 781 (Ill. 1959) (rejecting contention that a prisoner commits no crime when he escapes unless his commitment is technically

---

[5] The State concedes that if we reach the question of instructional error and conclude that the State relied on the warrant as an alternative basis for Grobstick's pre-escape custody in presenting its case to the jury, then Grobstick would be entitled to vacation of his conviction of felony escape. This is a concession of law which does not bind an appellate court. *State v. Gomaz*, 141 Wis. 2d 302, 307, 414 N.W.2d 626, 629 (1987). The fact is that Grobstick failed to object to the instruction, and as we have said, we lack the power even to review unobjected-to-instructional error, except for purposes of exercising our discretion under § 752.35, STATS.

lawful in all respects); *State v. Pace*, 402 S.W.2d 351, 353 (Mo. 1966) (authorities agree that defendant's innocence on the original charge, invalidity of the original information or indictment, acquittal, or reversal of conviction on appeal is not a defense to charge of escape).

The evidence is uncontroverted that when he escaped, Grobstick was in custody for a legal arrest of a crime, disorderly conduct. We have no reason to doubt that a jury instructed to consider only the charge of disorderly conduct would find Grobstick guilty of escape.

*By the Court.*—Judgment affirmed.