State of Wisconsin, Plaintiff-Respondent,

v.

Brent R. Reed, Defendant-Appellant-Petitioner.

Supreme Court

*No. 2003AP1781–CR. Oral argument January 14, 2005.—
Decided April 27, 2005.*

2005 WI 53

(Also reported in 695 N.W.2d 315.)

For the defendant-appellant-petitioner there were briefs by *David H. Weber* and *Liebmann, Conway, Olejniczak & Jerry, S.C.,* Green Bay, and oral argument by *David H. Weber.*

For the plaintiff-respondent the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. LOUIS B. BUTLER, JR., J.   Brent Reed seeks review of a published court of appeals' decision that affirmed a circuit court's non-final order denying his motion to dismiss an obstructing an officer charge.[1] *State v. Reed,* 2004 WI App 98, 273 Wis. 2d 661, 681 N.W.2d 568. The obstructing charge accompanies an operating a motor vehicle while intoxicated charge and stems from Reed's falsely telling a police officer that another individual was operating the vehicle. The court of appeals concluded that the "exculpatory denial" exception to the obstructing statute set forth in *State v. Espinoza,* 2002 WI App 51, 250 Wis. 2d 804, 641 N.W.2d 484, which absolves a defendant for falsely denying guilt of a crime when questioned by police, did not extend to these circumstances. *Reed,* 273 Wis. 2d 661, ¶ 10.

---

[1] *See* Wis. Stat. § 946.41 (2003–04). All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

¶ 2.   Reed asks this court to reverse the court of appeals' decision by upholding, and concluding that his statements fall within, *Espinoza*'s exculpatory denial exception. We affirm the court of appeals' decision, but conclude that there is no reason to depart from the clear text of the obstructing statute to write in an exculpatory denial exception. Although we reaffirm that the State should have sound reasons for believing that a defendant's statements were falsely made with intent to mislead the police and were not made out of a good-faith attempt to defend against accusations of a crime, we conclude that knowingly giving false information with intent to mislead the police is the antithesis of a good-faith attempt to defend against accusations of criminal wrongdoing. Accordingly, we overrule *Espinoza* and remand this case for further proceedings.

I

¶ 3.   The following facts are undisputed. On March 1, 2003, around 11:00 p.m. on a Saturday, a highway patrol officer passed a car that was parked alongside the highway and saw a person sitting in the driver's seat. The officer turned back to investigate and found the person, Reed, now sitting in the passenger's seat.

¶ 4.   After the officer approached the vehicle, he noticed a strong odor of intoxicants emanating from the vehicle. Reed identified himself with his driver license and then immediately stated he was not driving because he knew he had too much to drink. The officer observed that Reed's eyes were glassy and bloodshot and that Reed had slurred speech. Reed stated that a "Mr. Triller" was driving but pulled the vehicle over after they had an argument and then walked away.

¶ 5. Reed told the officer that Triller left about ten minutes ago, though he could not tell the officer which direction Triller walked. Reed was unable to give the officer Triller's phone number, stating he only knew Triller lived in Milwaukee. The officer ran the vehicle's license plate number and found that the vehicle was registered to Reed.

¶ 6. A backup officer arrived, and Reed was asked to perform sobriety tests. After he refused, insisting that he had not been driving, the officers arrested him. The backup officer then drove up the highway approximately five miles to see if anyone was walking along it. He did not find anyone.

¶ 7. Later that night, the officer obtained Triller's father's telephone number after calling Reed's brother, which eventually led him to Triller's telephone number. The officer called Triller and asked if he had been with Reed or in the area where Reed's car was parked alongside the highway on March 1. Triller said he had not.

¶ 8. The State charged Reed with obstructing an officer, and with operating a motor vehicle while under the influence of an intoxicant and with a prohibited alcohol concentration, each of the latter as third offenses. Reed moved to dismiss the obstruction charge, and the circuit court, the Honorable Richard L. Rehm, denied the motion. The circuit court concluded Reed went beyond an exculpatory denial by misdirecting the police investigation as to who was driving the vehicle.

¶ 9. Reed petitioned the court of appeals to review the nonfinal order, and the court of appeals granted the interlocutory appeal to clarify the exculpatory denial exception to the obstructing statute set forth in *Espinoza. Reed,* 273 Wis. 2d 661, ¶ 1. The court of appeals concluded that Reed's statements fell outside

*Espinoza's* exculpatory denial exception because Reed did more than simply provide an exculpatory denial; he gave false information related to the crime. *Id.,* ¶ 10. Thus, the court of appeals concluded he frustrated the police function, and, therefore, it affirmed the circuit court's order. *Id.*

¶ 10. Reed seeks review of the court of appeals' decision.

II

¶ 11. Reed challenges whether the complaint adequately sets forth a basis for an obstructing charge. Whether a criminal complaint sets forth probable cause to justify a criminal charge is a legal determination this court reviews de novo. *State v. Gaudesi,* 112 Wis. 2d 213, 219–21, 332 N.W.2d 302 (1983).

¶ 12. We look within the four corners of the complaint to see whether there are facts or reasonable inferences set forth that are sufficient to allow a reasonable person to conclude that a crime was probably committed and that the defendant probably committed it. *State v. Haugen,* 52 Wis. 2d 791, 793, 191 N.W.2d 12 (1971). A complaint is sufficient if it answers the following questions: "(1) Who is charged?; (2) What is the person charged with?; (3) When and where did the alleged offense take place?; (4) Why is this particular person being charged?; and (5) Who says so? or how reliable is the informant?" *State v. White,* 97 Wis. 2d 193, 203, 295 N.W.2d 346 (1980); *see State ex rel. Evanow v. Seraphim,* 40 Wis. 2d 223, 229–30, 161 N.W.2d 369 (1968). Only the fourth question is at issue in this case.

¶ 13.  Finally, this case requires us to interpret the obstructing statute, a task that presents a question of law we review de novo. The purpose of statutory interpretation is to determine what a statute means so that it may be given its full, proper, and intended effect. *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. We begin with the statute's language because we assume that the legislature's intent is expressed in the words it used. *Id.,* ¶ 45. Generally, language is given its common, ordinary, and accepted meaning. *Id.* If the meaning is plain, we ordinarily stop the inquiry. *Id.*

### III

¶ 14.  We begin with a discussion of *Espinoza.* In that case, although not expressly articulated, the court of appeals adopted an "exculpatory denial," also known as the "exculpatory no," exception to the obstructing statute. After being confronted by the police with allegations of stealing a tire from a car, Espinoza denied the accusation, threatened to sue the officers, and told the officers they had "the wrong guy." *Espinoza,* 250 Wis. 2d 804, ¶ 6. The State charged Espinoza with obstructing, and he moved to dismiss the charge, arguing that his mere denial of guilt, in and of itself, was an insufficient basis to support an obstructing charge. *Id.,* ¶ 8. Both the trial court and the court of appeals agreed.

¶ 15.  The court of appeals affirmed the dismissal for the following three reasons. First, it noted that in *Peters v. State,* 70 Wis. 2d 22, 29, 233 N.W.2d 420 (1975), this court stated that the district attorney should have sound reasons to believe that statements made by a suspected defendant to the police were knowingly and

intentionally made for the purpose of deceiving and misleading the police, and not simply out of a good faith desire to defend against an accusation of crime. *Espinoza,* 250 Wis. 2d 804, ¶ 12. The court found *Peters* instructive, but not dispositive, as it dealt with a defendant who provided a false alibi to the police. *Id.,* ¶ 13.

¶ 16.   Second, because *Peters* was not directly on point, the court took into consideration similar obstructing statutes in other jurisdictions and concluded that these obstructing statutes "have been generally construed to exclude prosecution for statements made by a defendant in defense of an accusation of a crime." *Id.,* ¶ 13. In support of this conclusion, the court of appeals turned to a single case from the Illinois Appellate Court, *People v. Brooks,* 367 N.E.2d 236 (Ill. App. Ct. 1977). The *Espinoza* court indicated that the *Brooks* court "held that the Illinois obstruction of justice statute excepts the exculpatory denials falsely made by a defendant in answer to police questioning in regard to his or her own involvement in a crime." *Espinoza,* 250 Wis. 2d 804, ¶ 14. The *Espinoza* court wrote that the Illinois Appellate Court concluded that the Illinois legislature did not intend for Illinois' obstructing statute to criminalize all false answers or statements that a defendant makes intending to exculpate him or herself against a criminal charge. *Id.,* ¶ 19. Using *Brooks,* and without turning to the obstructing statute's language or legislative history, the *Espinoza* court concluded, "[w]e also believe that the Wisconsin legislature did not intend such a broad result and adopt this reasoning." *See id.,* ¶ 20.

¶ 17.   Third, the court was mindful that " '[t]he function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that

function does not include the manufacturing of crime.' " *Id.,* ¶ 21 *(quoting Sherman v. United States,* 356 U.S. 369, 372 (1958)).

¶ 18.   Therefore, the court of appeals held that the legislature did not intend "to include within the statute all false answers or false statements which a defendant utters intending to exculpate himself or herself against a charge of a crime and to prevent his or her prosecution." *Id.,* ¶ 20. Instead, the court concluded that the legislature's intent was "to prevent the waste of time, energy and expense involved in having law enforcement officers running down false leads concerning criminal conduct." *Id.,* ¶ 22. In other words, only "conduct which would frustrate or thwart the police function" fell within the statute's purview. *Id.* Because the State did not contend that Espinoza's mere denial of wrongdoing thwarted the police function, the court affirmed the trial court's dismissal of the obstructing charge. *Id.*

¶ 19.   Reed asks this court to affirm *Espinoza's* exculpatory denial exception for three reasons. First, Reed claims that the exculpatory denial exception properly recognizes that false answers to police questions do not thwart the police function. Second, without the exculpatory denial, Reed argues that suspects would otherwise have only an illusory opportunity to avoid incriminating himself or herself. And third, Reed submits that a literal reading of the obstruction statute to preclude the exculpatory denial exception would lead to absurd results because the obstruction statute could become an instrument of prosecutorial abuse. Reed then argues that his statements fall within the exception because the police were not thwarted by Reed's statements but rather conducted nothing more than a routine follow-up investigation concerning the whereabouts of the enigmatic Mr. Triller.

77

¶ 20. The State responds that *Espinoza* should be overturned for two reasons. First, the State notes that all of Reed's arguments were rejected by the United States Supreme Court in *Brogan v. United States,* 522 U.S. 398 (1998). Second, aside from *Brogan,* the State argues *Espinoza* collapses on its own reasoning.[2] We agree with the State on both points.

A

■

¶ 21. We start with the obstructing statute's text. Wisconsin Stat. § 946.41 reads in relevant part:

> (1) Whoever knowingly resists or obstructs an officer while such officer is doing any act in an official capacity and with lawful authority, is guilty of a Class A misdemeanor.
>
> (2) In this section:
>
> (a) "Obstructs" includes without limitation knowingly giving false information to the officer . . . with intent to mislead the officer in the performance of his or her duty including the service of any summons or civil process.

Wisconsin JI—Criminal 1766A (2003) accurately sets forth the elements of obstructing an officer based on giving false information to police as follows:

---

[2] Alternatively, the State argues that Reed's statements nonetheless fall outside the exculpatory denial because he did more than simply deny criminal activity by affirmatively making misrepresentations concerning who was driving. *See United States v. Moore,* 27 F.3d 969 (4th Cir. 1994) (surveying exculpatory no cases in federal circuits pre-*Brogan v. United States,* 522 U.S. 398 (1998)).

78

1. The defendant knowingly gave false information to an officer.

2. The officer was doing an act in an official capacity.

3. The officer was acting with lawful authority.

4. The defendant intended to mislead the officer.[3]

---

[3] The second and third elements are not in dispute here.

To be clear, this case involves obstructing by giving false information. It does not involve obstructing an officer by making the performance of the officer's duties more difficult. *See* Wis JI—Criminal 1766. As such, our decision today does not overrule, indeed it does not even implicate, *Henes v. Morrissey*, 194 Wis. 2d 338, 533 N.W.2d 802 (1995), or *State v. Hamilton*, 120 Wis. 2d 532, 356 N.W.2d 169 (1984). *See* Abrahamson, C.J., concurring, ¶ 53 n.3.

As Chief Justice Abrahamson's concurrence notes, the court of appeals has recognized that the word "obstructs" has two meanings: " 'mak[es] more difficult' " and " 'giv[es] false information with intent to mislead.' " Abrahamson, C.J., concurring, ¶ 53 n.3, quoting *State v. Caldwell*, 154 Wis. 2d 683, 690, 454 N.W.2d 13 (Ct. App. 1990). In *Henes*, this court considered whether a defendant's remaining silent when confronted with police questioning constituted obstruction by either knowingly giving false information or by impeding an officer's investigation. *Henes*, 194 Wis. 2d at 353–54. Turning to the first form of obstruction, knowingly giving false information, this court concluded that the defendant's remaining silent and refusing to identify himself at the police officers' request was not obstructing by providing false information. As this court held, "[w]e do not equate the failure to identify oneself with the act of giving false information. Mere silence, standing alone, is insufficient to constitute obstruction under the statute." *Id.* at 354 (citation omitted). Turning to the second form of obstruction, impeding an officer's investigation, this court determined that the police officers "did not prove that obtaining [the defendant's] name

In order to be convicted of this crime, Reed would have to have knowingly given an officer false information and done so with the intent to mislead the officer. As long as the officer was doing an act in an official capacity, and was acting with lawful authority, the statute has been satisfied. Absent a statutory or com-

would have confirmed or refuted their suspicions or in fact made any difference in their investigation." *Id.* Therefore, this court concluded that the defendant did not obstruct the officers under either form of obstructing.

In *Hamilton*, 120 Wis. 2d at 536–37, this court was confronted with a defendant who also refused to identify himself to a police officer. The defendant was not charged with obstructing by providing false information. Apparently, the defendant was charged only with "obstructing," so this court had to determine what that term meant. This court assumed, but did not decide, that "obstructing" meant to hinder, delay, impede, frustrate or prevent an officer from performing his or her duties. *Id.* at 541. Because the officer did not testify the defendant's failure to identify himself impeded the investigation in any way, and because no reasonable inference could be drawn to that effect, this court concluded the defendant could not have obstructed the officer. *Id.* at 543–44.

Contrary to Chief Justice Abrahamson's concurrence, neither *Henes* nor *Hamilton* requires actual obstruction of the police function to exist for an obstructing by giving false information charge to be satisfied. Both cases essentially involved obstructing by making the performance of the officer's duties more difficult. In those situations, the *Henes* and *Hamilton* courts agreed that the defendant's action must make a difference in an official's ability to do an official act. *Henes*, 194 Wis. 2d at 354; and *Hamilton*, 120 Wis. 2d at 543. On the other hand, the legislature has already determined that "knowingly giving false information to the officer with intent to mislead him in the performance of his duty" constitutes "obstruction" as a matter of law. *Caldwell*, 154 Wis. 2d at 688. Therefore, contrary to Chief Justice Abrahamson's concurrence, our decision today does not overrule any aspects of *Henes* or *Hamilton*.

80

mon law defense to the contrary, there is simply no basis to conclude that false denials of guilt that are knowingly made with intent to mislead the officer are somehow lawful. We now consider the relevant statutory elements of the offense of obstructing and Reed's three arguments for urging this court to depart from the statute's clear language and accept an exculpatory denial defense to this offense.

1

¶ 22.  Reed first argues that knowingly and falsely telling the police "I didn't do it" does not thwart the police function. Reed relies on *United States v. Cogdell,* 844 F.2d 179, 194 (4th Cir. 1988), where the Fourth Circuit concluded that a false denial of guilt "is merely one of the ordinary obstacles confronted in a criminal investigation." The shortcoming with this argument is that the obstructing statute does not require the knowingly made false statements to thwart the police function. Instead, the statute requires the defendant to knowingly give false statements with intent to mislead the police officer in the performance of his or her duties.[4]

¶ 23.  Wisconsin Stat. § 939.23(2) defines "know" as requiring "only that the actor believes that the

---

[4] Even if our statute did require the police function to be perverted, we note that the United States Supreme Court rejected the import of Reed's argument in *Brogan,* 522 U.S. at 402, stating:

> We cannot imagine how it could be true that falsely denying guilt in a Government investigation does not pervert a governmental function. Certainly the investigation of wrongdoing is a proper governmental function; and since it is the very *purpose* of an investigation to uncover the truth, any falsehood relating to the subject of the investigation perverts that function. (Emphasis in original.)

specified fact exists." *See also State v. Lossman,* 118 Wis. 2d 526, 535, 348 N.W.2d 159 (1984). The specified facts, in this case, are giving false information to the officer, while the officer is doing an act in an official capacity and with lawful authority.[5] *See id.* at 536. Information is "false" when it does "not correspond[] to truth or reality: not true: erroneous, incorrect . . . intentionally untrue: lying." *Webster's Third New Int'l Dictionary* 819 (unabr. 1986).

¶ 24.   What is most significant here, however, is that the actor must knowingly give the false information with intent to mislead the officer in the performance of his or her duty. Wisconsin Stat. § 939.23(4) defines "with intent to" as meaning "the actor either has a purpose to do the thing or cause the result specified, or is aware that his or her conduct is practically certain to cause that result." To "mislead" means "to lead in a wrong direction or into a mistaken action or belief:   deceive." *Webster's Third New Int'l Dictionary* 1444 (unabr. 1986); *see also Black's Law Dictionary* 1000 (6th ed. 1990) (defining "misleading" as "[d]elusive; calculated to lead astray or to lead into error.").[6]

---

We note that *Brogan* is not directly on point, as the statute interpreted in that case, 18 U.S.C. § 1001 (1988 ed.), does not contain an "intent to mislead" element.

[5] As our discussion below explains, the actor must also intend to mislead the officer in the performance of his or her duties.

[6] The defendant's subjective intent "must be ascertained, based on the totality of the circumstances, including what the defendant said or did, what the officer said or did, and any objective evidence which is available." *State v. Lossman,* 118 Wis. 2d 526, 543, 348 N.W.2d 159 (1984).

¶ 25. The focus is clearly on what the defendant intended to do by knowingly making false statements, not on the eventual outcome. If the intent was to purposefully deceive, or if the defendant was aware that making the false statement was practically certain to deceive, the statute is satisfied. Whether the police were thwarted, therefore, is immaterial.

¶ 26. The obstructing statute also does not distinguish between knowing falsehoods said with intent to mislead that are lawful and those that are criminal. As long as the false statement is made knowingly and with intent to mislead the police, the conduct constitutes obstructing.

¶ 27. The following cases are in accord with these principles. In *State v. Griffith*, 2000 WI 72, ¶ 52, 236 Wis. 2d 48, 613 N.W.2d 72, a person falsely identified himself to police during a traffic stop. This court held that a person detained in a traffic stop has "every right to decline to answer" police questioning. *Id.* Exercising that right cannot result in a prosecution for obstructing, this court noted. *Id.* "However, if a passenger chooses to answer but gives the officer false information, the passenger can be charged with obstructing an officer in violation of Wis. Stat. § 946.41(1)."[7] *Id.*, ¶ 65.

¶ 28. Likewise, in *Peters*, 70 Wis. 2d at 29, this court was confronted with a defendant who furnished a false alibi in order to exculpate himself during a police burglary investigation. This court held that "the statute permits conviction for obstruction of an officer under circumstances where efforts to intentionally mislead an

---

[7] *Accord Henes*, 194 Wis. 2d at 353 (defendant's remaining silent and refusing to identify himself at police officers' request was not obstructing by providing false information).

officer may be involved as were allegedly present here."
*Id.*

¶ 29.    Consistent with these cases is *State v. Caldwell,* 154 Wis. 2d 683, 686, 454 N.W.2d 13 (Ct. App. 1990). In that case, the defendant was detained for suspected retail theft, during which time he provided the police with a false name. *Id.* at 687. The defendant was later convicted of obstructing. He appealed, arguing that the conviction should be reversed because the officer's performance of his duties was not in fact prevented or made more difficult by the false information. *Id.* The court of appeals disagreed. The court held "that proof of knowingly giving false information with intent to mislead constitutes an obstruction as a matter of law." *Id.* at 686. "No other proof," the court wrote, "is needed."[8] *Id.*

■

¶ 30.    In sum, it is well-established that obstruction in this context need not focus on whether the police were actually thwarted in their investigation. "Obstruc-

---

[8] Although Chief Justice Abrahamson's concurrence complains that we have erroneously overturned *State v. Espinoza,* 2002 WI App 51, 250 Wis. 2d 804, 641 N.W.2d 484, because it was a judicial interpretation of a statute that became part of the statute due to the legislature's inaction, *see* Abrahamson, C.J., concurring, ¶ 52, *Espinoza* clearly conflicts with *State v. Caldwell,* 154 Wis. 2d 683, 686, 454 N.W.2d 13 (Ct. App. 1990). Either *Espinoza,* which holds that lying to the police to exculpate oneself may not be criminal, or *Caldwell,* which holds that knowingly providing false information with intent to mislead is obstruction as a matter of law, must be overturned. We therefore have to resolve the conflict, and we resolve it by siding with *Caldwell.* The same reasoning applies to Chief Justice Abrahamson's plea to stare decisis to uphold *Espinoza. See* Abrahamson, C.J., concurring, ¶ 53. We conclude that *Caldwell* represents the proper view of the law.

tion" occurs where a person knowingly gives false information to the officer with intent to mislead the officer in the performance of his or her duty. Concluding otherwise not only unwarrantedly strays from the clear language of the obstructing statute, it encourages people to lie to police. We cannot, as a matter of good public policy, condone this.

2

¶ 31. Reed next argues that without the exculpatory denial, suspects who are posed questions by the police are faced with a "cruel trilemma": they can either (1) admit guilt; (2) remain silent; (3) falsely deny guilt. Reed argues that admitting guilt is not a viable option because a defendant has the right against self-incrimination. Exercising the right to remain silent, Reed submits, is illusory because it is an unnatural and illogical response to an accusation of wrongdoing by police and because silence can be used against the person to impeach credibility if the defendant takes the stand at trial. *See State v. Sorenson,* 143 Wis. 2d 226, 258, 421 N.W.2d 77 (1988) (allowing "probative comment on a defendant's pre-*Miranda* silence when the defendant elects to testify on his or her own behalf."). Thus, he reasons, the only viable avenue a cornered suspect has is to lie. Failure to recognize the exculpatory denial, Reed maintains, renders his Fifth Amendment privileges meaningless. We find the United States Supreme Court's analysis in *Brogan* rejecting this argument instructive.

¶ 32. In *Brogan,* the Supreme Court was confronted with whether the exculpatory denial was an exception to criminal liability under 18 U.S.C. § 1001

(1988 ed.).[9] *Brogan,* 522 U.S. at 399. Brogan, a union officer, lied to federal agents about cash payments he unlawfully accepted from an employer. *Id.* at 399–400. Among other crimes, he was indicted, tried, and convicted for making a false statement within the jurisdiction of a federal agency in violation of § 1001. Brogan appealed, claiming the conviction should be overturned because his false denial of wrongdoing fell within the exculpatory no exception. Although several circuit courts of appeals recognized the exculpatory no exception, the Supreme Court rejected it.

¶ 33. Like Reed, Brogan argued that "a literal reading of § 1001 violates the 'spirit' of the Fifth Amendment because it places a 'cornered suspect' in the 'cruel trilemma' of admitting guilty, remaining silent, or falsely denying guilt." *Id.* at 404. The Court was not persuaded.

¶ 34. At the outset, the Court quipped that "[t]his 'trilemma' is wholly of the guilty suspect's own making, of course. An innocent person will not find himself in a similar quandary (as one commentator has put it, the innocent person lacks even a 'lemma,' . . .)." *Id.* (citation omitted). The Court then observed that the "cruel trilemma" aphorism was first used "to explain the importance of a suspect's Fifth Amendment right to remain silent when subpoenaed to testify in an official

---

[9] 18 U.S.C. § 1001 (1988 ed.) provided:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

inquiry." *Id.* (*citing Murphy v. Waterfront Comm'n of N.Y. Harbor,* 378 U.S. 52 (1964)). Without the right to remain silent, the suspect would be exposed to the cruel trilemma of "self-accusation, perjury or contempt." *Id.* From this backdrop, the Court explained:

> In order to validate the "exculpatory no," the elements of this "cruel trilemma" have now been altered—ratcheted up, as it were, so that the right to remain silent, which was the *liberation* from the original trilemma, is now *itself* a cruelty. We are not disposed to write into our law this species of compassion inflation. (Emphasis in original.)

*Brogan,* 522 U.S. at 404.

¶ 35. The Court then declined to conclude that the Fifth Amendment incorporated a "right to lie," writing:

> Whether or not the predicament of the wrongdoer run to ground tugs at the heartstrings, neither the text nor the spirit of the Fifth Amendment confers a privilege to lie. Proper invocation of the Fifth Amendment privilege against compulsory self-incrimination allows a witness to remain silent, but not to swear falsely.

*Id.* (citation omitted). No matter how illusory the right to silence may seem to the defendant, that "does not exert a form of pressure that exonerates an otherwise unlawful lie." *Id.* at 405.

¶ 36. For these same reasons, we reject Reed's "cruel trilemma" arguments. We have no doubt that suspects accused of criminal conduct face difficult choices. While the Fifth Amendment provides them with a shield against compelled self-incrimination, it does not provide them with a sword upon which to thrust a lie.

■■■■■

3

¶ 37.   Last, Reed maintains that a literal reading of the obstruction statute to preclude the exculpatory denial exception would lead to absurd results because the obstruction statute could become an instrument of prosecutorial abuse. We are not convinced.

¶ 38.   In *Brogan,* the defendant made the same argument, "that overzealous prosecutors will use [§ 1001] as a means of 'piling on' offenses—sometimes punishing the denial of wrongdoing more severely than the wrongdoing itself." *Id.* The Court was not swayed:

> The objectors' principal grievance . . . lies not with the hypothetical prosecutors but with Congress itself, which has decreed the obstruction of a legitimate investigation to be a separate offense, and a serious one. It is not for us to revise that judgment. Petitioner has been unable to demonstrate, moreover, any history of prosecutorial excess, either before or after widespread judicial acceptance of the "exculpatory no." And finally, if there is a problem of supposed "overreaching" it is hard to see how the doctrine of the "exculpatory no" could solve it. It is easy enough for an interrogator to press the liar from the initial simple denial to a more detailed fabrication that would not qualify for the exemption.

*Id.* at 405–06.

¶ 39.   We agree with the Court's analysis. At the outset, we note that our legislature has similarly drafted our obstructing statute in broad and unqualified terms. The legislature declared that anyone who knowingly gives false information with the intent to mislead an officer in the performance of his or her duties engages in criminal conduct. If there is to be an

exception in this statute for exculpatory lying, the legislature is the appropriate body to include it.

¶ 40.   In addition, Reed's argument is entirely speculative. He has not presented us with any evidence of prosecutorial abuse that could have arguably required spawning the exculpatory denial exception or that requires its continuation today. Beyond that, we agree with the State that there is nothing absurd about requiring people who decide not to remain silent in the face of police questioning to tell the truth.

### B

¶ 41.   The State also argues that *Espinoza* must fall based on its own reasoning. We agree.

¶ 42.   Aside from the fact that *Espinoza* declared the legislature's intent in the obstructing statute without utilizing any statutory interpretation tools, the single out-of-state case *Espinoza* relied on to determine our legislature's intent, the Illinois Appellate Court decision in *Brooks,* has since been overturned. In *People v. Ellis,* 765 N.E.2d 991, 997 (Ill. 2002), the Illinois Supreme Court noted that it had never considered whether the exculpatory denial exception could shield a defendant from criminal liability under its obstructing statute.[10] The court also stated that it had never commented on the doctrine's breadth or requirements. *Id.* "We need not address the latter question," the court

---

[10] Illinois' *obstruction of justice statute*, 720 Ill. Comp. Stat. Ann. 5/31–4 (West 1996) provided in pertinent part:

A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he knowingly commits any of the following acts:

(a) . . . furnishes false information . . . .

stated, "because, for the reasons that follow, we answer the former in the negative."[11] *Id.*

¶ 43.   More critically, the *Espinoza* court found instructive this court's admonition in *Peters,* 70 Wis. 2d at 29, to district attorneys that they "should have sound reasons for believing that statements made by a suspected defendant to the police . . . were knowingly and intentionally made for the purpose of deceiving and misleading the police, and not simply out of a good-faith desire to defend against an accusation of crime." *See Espinoza,* 250 Wis. 2d 804, ¶¶ 12–13. Based on this language, the court of appeals rejected what it called the State's "broad sweeping contention" that "Espinoza's denial of involvement in a crime which there is probable cause to believe he committed, as a matter of law, establishes probable cause that he also committed the crime of obstructing." *Id.,* ¶ 21. *Espinoza* misconstrued *Peters'* admonition.

¶ 44.   As noted above, *Peters* involved a defendant who provided a false alibi in an attempt to exculpate himself during a police burglary investigation. *Id.* at 26–27. The State charged the defendant with obstruction only after a John Doe hearing was held regarding

---

[11] The *Ellis* court first underwent a plain-meaning analysis of its obstruction statute and concluded that it did not include an exculpatory denial exception. *People v. Ellis,* 765 N.E.2d 991, 997–98 (Ill. 2002). The court then observed the United States Supreme Court in *Brogan* eviscerated the exception and concluded that there was no federal constitutional right to lie. *Id.* at 998–99. The *Ellis* court held the same for the Illinois constitution. *Id.* at 999. Finally, the *Ellis* court disagreed that the exculpatory denial exception was required to protect the Illinois citizens from prosecutorial overzealousness, particularly because the police in that case did not press the defendant in order to obtain an obstruction charge. *Id.* at 1000–01.

the burglary. *Id.* at 27. This court held that "the [obstruction] statute permits conviction for obstruction of an officer under circumstances where efforts to intentionally mislead an officer may be involved as were allegedly present here." *Id.* at 29. However, this court wrote:

> [B]efore such a charge should be made . . . , the district attorney should have sound reasons for believing that statements made by a suspected defendant to the police in terms of an alibi were knowingly and intentionally made for the purpose of deceiving and misleading the police, and not simply out of a good-faith desire to defend against an accusation of crime.

*Id.*

¶ 45.    This court's admonition to district attorneys that a defendant's good-faith desire to defend against an accusation of criminal conduct cannot be stretched to exonerate any falsehoods knowingly made with intent to mislead the police. In common usage, "good-faith" is "a state of mind indicating honesty and lawfulness of purpose." *Webster's Third New Int'l Dictionary* 978 (unabr. 1986). A good-faith desire to defend against accusations is the antithesis of knowingly providing the police with falsehoods with intent to mislead. Contrary to the court of appeals' suggestion in *Espinoza, Peters* cannot be construed to allow such results.

¶ 46.    People make mistakes, and people can provide mistaken answers to police questioning. Mistaken answers, however, are not false statements made with intent to mislead the police. People can also disagree. People can have legitimate disagreements about what the facts are. People can also legitimately disagree on what the facts mean. Legitimate disagreements cannot form the basis for an obstructing charge. Knowingly

made false statements that are not made with intent to mislead cannot form a basis for the charge of obstructing. Surely there will be close cases where a suspect's statements push these boundaries, but that is why this court previously cautioned that district attorneys should have sound reasons for believing that a suspect's statements made to the police were knowingly made with the intent to mislead the police. We renew that admonition today.

## IV

¶ 47.    Turning to the four corners of the complaint, we conclude it contains sufficient facts and reasonable inferences to allow a reasonable person to conclude that a crime was probably committed and that Reed probably committed it. *See Haugen,* 52 Wis. 2d at 793. Of the five questions we are to answer when analyzing the sufficiency of the complaint, the only question at issue is the fourth one:   why is Reed being charged? In light of our discussion above, Reed is being charged for falsely stating that he was not driving and that another person, Mr. Triller, was. Under the circumstances presented in the complaint, reasonable inferences can be drawn that those statements were not true, that Reed knew that the statements were not true, and that the statements were said with intent to mislead the police.

## V

¶ 48.    In sum, we conclude that there is no exculpatory denial exception in the obstructing statute. The statute criminalizes all false statements knowingly

made and with intent to mislead the police. Although the State should have sound reasons for believing that a defendant knowingly made false statements with intent to mislead the police and were not made out of a good-faith attempt to defend against accusations of a crime, we conclude that the latter can never include the former; knowingly providing false information with intent to mislead the police is the antithesis of a good-faith attempt to defend against accusations of criminal wrongdoing. Accordingly, we overrule *Espinoza*. Because the complaint in this case is satisfactory, we affirm the decision of the court of appeals and remand the matter to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—The decision of the court of appeals is affirmed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 49. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I agree with the majority opinion and the State that the charge against Reed for obstructing an officer should stand and that the cause should be remanded to the circuit court for further proceedings. I write because I view the majority's overruling of *State v. Espinoza,* 2002 WI App 51, 250 Wis. 2d 804, 641 N.W.2d 484, as unnecessary and unwise.

I

¶ 50. Overruling *Espinoza* is unnecessary because, as the court of appeals held and the State agrees, Reed's statements fall outside the "exculpatory no" exception to the obstructing statute set forth in *Espinoza.* Reed falsely implicated someone else as the driver of the car. Reed went beyond "a good faith desire

93

to defend against an accusation."[1] Thus the majority opinion needlessly overreaches to overrule *Espinoza* and adjudicates an issue that this court need not decide on the facts present in the instant case.

## II

¶ 51.   In addition to being unnecessary, overruling *Espinoza* is unwise for several reasons.

¶ 52.   First, *Espinoza* is a statutory interpretation case, interpreting Wis. Stat. § 946.41. Without even mentioning the rule and without providing sufficiently strong reasons, the majority opinion disregards the rule that this court does not overturn a judicial interpretation of a statute. The judicial interpretation of a statute ordinarily becomes part of the statute that only the legislature can overturn.[2] The legislature has not reacted to *Espinoza.*

¶ 53.   Second, in overturning *Espinoza,* the majority opinion overturns previous cases supporting the court of appeals' conclusion in *Espinoza* that to sustain an obstructing charge, some actual obstruction of the police function must exist.[3] Stare decisis, let the deci-

---

[1] *State v. Espinoza,* 2002 WI App 51, ¶ 12, 250 Wis. 2d 804, 641 N.W.2d 484.

[2] *See, e.g., State v. Rosenburg,* 208 Wis. 2d 191, 196, 560 N.W.2d 266 (1997); *State ex rel. LaFollette v. Circuit Court,* 37 Wis. 2d 329, 341, 155 N.W.2d 141 (1967).

[3] *Espinoza,* 250 Wis. 2d 804, ¶ 22. For other cases indicating that actual obstruction is needed in an obstruction conviction, see, *e.g., State v. Grobstick,* 200 Wis. 2d 242, 249–54, 546 N.W.2d 187 (Ct. App. 1996) (jury was instructed that obstructing means "that the conduct of the defendant prevents or makes more difficult the performance of the officer's duties," and court held that evidence was sufficient for jury to find that defendant's conduct of jumping out window and hiding made

sion stand, is a bedrock principle in our system of justice that should govern the present case.

¶ 54.   Third, the majority opinion contravenes the intent of the legislature. As the *Espinoza* court explained, the legislature intended to circumscribe a suspect's conduct that would thwart or frustrate the

officer's task more difficult); *Henes v. Morrissey,* 194 Wis. 2d 338, 354, 533 N.W.2d 802 (1995) (court held that not only did Henes' refusal to identify himself not constitute "giving" false information, but that "the deputies have not shown how Henes' refusal to identify himself 'obstructed' their investigation as required under the first element of the offense."); *State v. Hamilton,* 120 Wis. 2d 532, 356 N.W.2d 169 (1984) (like in *Henes,* defendant refused to identify himself and officer arrested him for obstructing an officer contrary to Wis. Stat. § 946.41(1); State defined word "obstructed" to mean hindered, delayed, impeded, frustrated or prevented officer from performing duties and argued that defendant's failure to provide information is per se violation of statute; court assumed that State's definition of obstruction was correct and held that without a showing that defendant's failure to furnish information adversely affected officer's performance of duties, conviction had to be reversed for insufficient evidence; actual hindrance is necessary component of Wis. Stat. § 946.41(1)).

In *State v. Caldwell,* 154 Wis. 2d 683, 690, 454 N.W.2d 13 (Ct. App. 1990), the court of appeals concluded that the word "obstructs" has two discrete meanings: "mak[es] more difficult" and "giv[es] false information with intent to mislead." The court of appeals concluded that under the first meaning the effect of the defendant's conduct on the officer was relevant; under the second, it was not. The court of appeals further concluded that it need not determine the precise definition of obstruction. *Id.* at 688. The evidence was sufficient for a conviction under both meanings of the word "obstruct"; the false information made the officer's performance of his duty more difficult.

*But see State v. Hinchey,* No. 89–0334–CR, unpublished slip op. (Ct. App. Sept. 20, 1989) (rejecting the "exculpatory no" doctrine).

police function.[4] The legislature sought to prevent the waste of time, energy, and expense of having law enforcement officers run down false leads concerning criminal conduct. Thus, the *Espinoza* court of appeals held that a person's denial of guilt when confronted by a police officer about an alleged crime cannot be a basis for an obstructing-an-officer charge.[5]

¶ 55. The *Espinoza* court got it right: "And though truth and morality may have required Espinoza to answer in the affirmative when he was questioned regarding the tire incident, we cannot say that the law required him to do so."[6]

¶ 56. Fourth, the majority opinion ignores the rationale of *Espinoza* and this court's decision in *Peters v. State,* 70 Wis. 2d 22, 233 N.W.2d 420 (1975), upon which *Espinoza* is based. *Peters* correctly interpreted Wis. Stat. § 946.41. The *Peters* court distinguished between statements by a suspect "knowingly and intentionally made for the purpose of deceiving and misleading the police, and not simply [made] out of a good-faith desire to defend against an accusation of crime."[7]

¶ 57. *Peters* and *Espinoza* got it right. The statute does not encompass all of a suspect's false answers or false statements uttered with the intent to exculpate himself or herself against a criminal charge in the hope of preventing prosecution.[8]

¶ 58. In contrast, the majority opinion recapitulates various dictionary definitions and employs a literal reading of the statute to reinterpret Wis. Stat.

[4] *Espinoza,* 250 Wis. 2d 804, ¶ 22.

[5] *State v. Reed,* 2004 WI App 98, ¶¶ 7–8, 273 Wis. 2d 661, 681 N.W.2d 568.

[6] *Espinoza,* 250 Wis. 2d 804, ¶ 22.

[7] *Peters v. State,* 70 Wis. 2d 22, 29, 233 N.W.2d 420 (1975).

[8] *Espinoza,* 250 Wis. 2d 804, ¶ 20.

§ 946.41.[9] In declaring that suspects have the right to remain silent and should not lie, the majority opinion renders an illogical result logical and gives the result an appearance of being morally acceptable. The majority opinion errs. The majority opinion has disregarded the principles underlying the Fifth Amendment, the guarantee against self-incrimination. The result is fiction built on fiction.

¶ 59.  The majority opinion forgets that the "exculpatory no" doctrine has its roots in a "latent distaste for an application of the statute that is uncomfortably close to the Fifth Amendment."[10] Numerous federal and state court decisions starting as far back as 1953[11] have adopted the *Espinoza* approach, cognizant of the Fifth Amendment self-incrimination implications.[12] Remaining insensitive to the dangers to liberty interests inherent in a literal reading of the statute, the majority opinion discards *Espinoza* and fails to replace the "exculpatory no" doctrine with any other safeguard.

[9] Majority op., ¶¶ 23, 24, 45.

[10] *United States v. Lambert,* 501 F.2d 943, 946 n.4 (5th Cir. 1974) (discussing 18 U.S.C. § 1001, federal false statement statute).

[11] *United States v. Levin,* 133 F. Supp. 88 (D. Colo. 1953).

[12] *See United States v. Moore,* 27 F.3d 969 (4th Cir. 1994); *United States v. Cogdell,* 844 F.2d 179, 182 (4th Cir. 1988); *United States v. Medina de Perez,* 799 F.2d 540, 544 (9th Cir. 1986); *State v. Valentin,* 519 A.2d 322 (N.J. 1987); *New Jersey v. Pandozzi,* 347 A.2d 1, 3 (N.J. Super. Ct. 1975) (citing numerous cases).

For discussions of the "exculpatory no" doctrine, see Erica S. Perl, *United States v. Rodriguez-Rios: The Fifth Circuit Says "Adios!" to the "Exculpatory No" Doctrine,* 69 Tul. L. Rev. 621 (1994) (supporting doctrine); Giles A. Birch, *False Statements to Federal Agents: Induced Lies and the Exculpatory No,* 57 U. Chi. L. Rev. 1273 (1990) (proposes affirmative defense of the "induced lie" to replace exculpatory no doctrine).

¶ 60. Fifth, the majority opinion unwisely utilizes a 5–4 majority opinion in *Brogan v. United States,* 522 U.S. 398 (1998), interpreting not the federal constitution, but a federal criminal statute that differs from Wis. Stat. § 946.41. The *Brogan* case was decided on January 26, 1998, four years before *Espinoza* was decided on January 23, 2002. A U.S. Supreme Court decision interpreting a federal statute (that differs from the Wisconsin statute) is not persuasive in overruling a Wisconsin decision that was handed down subsequent to the U.S. Supreme Court decision.

¶ 61. Smitten with the lead opinion in *Brogan,* the majority opinion in the present case overlooks the concurrences and dissents in *Brogan.* Concurring Justices Souter and Ginsburg describe in dismay "the extraordinary authority Congress, perhaps unwittingly, has conferred on prosecutors to manufacture crimes."[13] They call on Congress to examine the statute to remove the risks inherent in the statute.

¶ 62. Dissenting Justices Stevens and Breyer agree with the litany of horrors Justices Souter and Ginsburg describe. These dissenting justices contend that the majority is overturning a long-standing interpretation of the federal statute. They urge the Court to "show greater respect for the virtually uniform understanding of the bench and bar [about the meaning of the statute] that persisted for decades with . . . the approval of this Court as well as the Department of Justice."[14] The four justices (straddling both sides of the outcome in *Brogan*) have the better argument than the five justices, as far as I am concerned.

---

[13] *Brogan v. United States,* 522 U.S. 398, 408 (1998) (Ginsburg, J., concurring).

[14] *Brogan,* 522 U.S. at 420 (Stevens, J., dissenting).

¶ 63. Also supporting my position is the influential American Law Institute Model Penal Code. Under the Code, giving false answers to inquiries initiated by law enforcement does not confer liability for hindering prosecution on an obstruction of justice theory. A person commits an offense when he or she *volunteers* false information to a law enforcement officer.[15] The commentary explains that the exclusion of false answers in response to police questioning "represents a delicate policy judgment, premised in part on the fear that a wider reach . . . would invite abusive charges by police against persons interviewed in the course of investigating crime."[16] Other sections of the criminal code are better suited, say the commentators, to implement a penal policy on false statements to the police.[17]

¶ 64. Sixth, a literal reading of the obstruction statute enables the statute to become an instrument for abuse. The *Espinoza* court declared "We must keep in mind: 'The function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that function does not include the manufacturing of crime.' *Sherman v. United States,* 356 U.S. 369, 372 (1958)."[18]

¶ 65. Under the majority opinion, law enforcement officers are empowered to manufacture crimes

---

[15] Model Penal Code § 242.3(5) at 223 (1980).

[16] Model Penal Code § 242.3, Commentary at 235 (1980).

[17] *See, e.g.,* Model Penal Code §§ 241.3 (unsworn written false statements), 241.4 (false alarms to public safety agencies) (1980).

For similar Wisconsin statutes, see Wis. Stat. § 941.13 (false alarms to firefighters); § 946.31 (perjury); § 946.32 (false swearing).

[18] *Espinoza,* 250 Wis. 2d 804, ¶ 21 (parallel citations omitted).

when none existed by posing questions to suspects who are not entitled to (or given) a *Miranda* warning because the suspects are not yet "in custody."[19] At oral argument before the U.S. Supreme Court in *Brogan,* the U.S. Solicitor General conceded that the federal false statement statute could be used to "escalate completely innocent conduct into, a felony."[20]

¶ 66.   Here are some examples of what may be coming under the majority opinion's interpretation of Wis. Stat. § 946.41.

¶ 67.   A driver is stopped for a civil speeding violation. In response to the question whether she was going over the 35 mile an hour speed limit, she says no. She can be criminally prosecuted for denying that she was speeding.

¶ 68.   Another example:   An officer is on the lookout for a robbery suspect. The officer stops a suspect. The suspect somewhat matches the description but the car the suspect claims as his does not. The following dialogue ensues:

Q.   Do you know anything about a robbery tonight?

A.   No.

Q.   Did you drive a different car earlier this evening?

A.   No.

Q.   Did you have a gun earlier tonight?

A.   No.

---

[19] *Berkemer v. McCarty,* 468 U.S. 420, 441 (1984).
[20] *Brogan,* 522 U.S. at 411.

Q. Do you have any illegal substances on you or in your car?

A. No.

¶ 69. Each of the responses is an "exculpatory no." The suspect appears nervous at the questioning, and the officer believes the suspect is lying. She concludes that she has probable cause to arrest the suspect on a charge of obstructing an officer by lying but does not make an arrest.[21] The officer searches the suspect and the area surrounding the suspect, finds marijuana, and immediately arrests the suspect for possession of a controlled substance. The suspect is never arrested for or charged with or convicted of robbery or obstructing an officer. The only charge and conviction is for possession of marijuana. The search and the conviction will be upheld. *See State v. Sykes,* 2005 WI 48, 279 Wis. 2d 742, 695 N.W.2d 277 (search preceding arrest when there is probable cause to arrest; arrest for different offense on basis of evidence found in the search; search valid).

¶ 70. Far-fetched? I think not. Look at the reported cases described in Justice Ginsburg's concurrence in the *Brogan* case.[22] In those cases federal law enforcement officers induced a denial for the express purpose of obtaining incriminating statements for prosecution under the obstruction statute rather than to obtain information.

¶ 71. When the legislature enacts a statute, it intends the statute to make sense in application. A court's interpretation of a statute should likewise make

---

[21] For a discussion of the minimal quantum of evidence needed for probable cause, see *Jefferson County v. Renz,* 231 Wis. 2d 293, 317–27, 603 N.W.2d 541 (1998) (Abrahamson, C.J., concurring).

[22] *Brogan,* 522 U.S. at 409–12 (Ginsburg, J., concurring).

sense. The court should not interpret a statute to set up suspects and enable law enforcement to "manufacture" crimes or engage in warrantless searches on the basis of manufactured crimes. The majority opinion's interpretation of Wis. Stat. § 946.41 unnecessarily removes the *Espinoza* safety net preventing the unfortunate results anticipated by this court in 1970 in *Peters*. This case is a step backwards for law enforcement, public safety, and constitutional rights.

¶ 72.  For the reasons set forth, I cannot join the majority opinion.

¶ 73.  I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

¶ 74. DAVID T. PROSSER, J. (*concurring*).  I concur in the conclusion that the State may prosecute Brent Reed for obstructing an officer under Wis. Stat. § 946.41. Both the majority opinion of Justice Butler and the concurring opinion of Chief Justice Abrahamson reason persuasively that if a jury finds that Reed not only falsely denied driving his car but also falsely identified another person as the driver, it may find that Reed violated the statute.

¶ 75.  The majority opinion celebrates truth telling but it does so by delivering a literal, inflexible interpretation of the statute. I see the opinion as long on philosophy but short on reality. The concurrence, by contrast, recognizes reality but it ends up authorizing deception. I am unable to join either of these two opinions and thus write separately.

¶ 76.  The majority opinion is not likely to change the behavior of people who have something to hide. "Denial," Mark Twain once quipped, "ain't just a river in Egypt." It is a human flaw dating back to the Garden of Eden.

102

¶ 77. What the majority opinion may change is the behavior of law enforcement. Law enforcement officers may try harder to pose questions that will incriminate suspects if they are answered truthfully, or subject them to additional charges if they are denied. Because police officers are not jurors, a suspect who remains silent is often presumed to deserve increased investigation.

¶ 78. Courts are likely to respond to this in the manner so clearly foreshadowed by the Chief Justice in her concurrence, by fashioning new warnings to suspects and developing new rationales for suppressing evidence. Thus, for prosecutors, the happiness derived from the majority opinion may be short lived.

¶ 79. While it is hard to deny the appeal of the majority opinion, I am fearful that its broad language opens a Pandora's box. I would prefer that we decide the case very narrowly and then move on.